IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JOSE A. CENTENO | : | Case No. 3:16 CV 00087 |
| 714 BURKE WAY | : | |
| DAYTON, OH 45403 | : | Judge |
| | : | |
| Plaintiff, | : | |
| | : | **COMPLAINT WITH** |
| v. | : | **JURY TRIAL DEMAND** |
| | : | |
| MEGAN J. BRENNAN | : | |
| POSTMASTER GENERAL | : | |
| UNITED STATES POSTAL SERVICE | : | |
| 475 L'ENFANT PLAZA SW | : | |
| WASHINGTON, DC 20260 | : | |
| | : | |
| Defendant. | : | |

_____

**I. NATURE OF THE CASE**

1. This complaint is filed by Plaintiff, Jose A. Centeno, a disabled former employee of the United States Postal Service, Cincinnati District Office, challenging the agency's refusal to accommodate his disability, retaliation against him for engaging in protected activity, and breaching a settlement agreement. He brings this action to obtain full and complete relief and to redress the agency's unlawful employment practices. Specifically, Mr. Centeno has a disability and was regarded as having a disability by the agency. Because of his disability, Mr. Centeno requested reasonable accommodations. Initially, the agency accommodated Mr. Centeno by permitting him the requested accommodations. However, a change in management occurred and the new leadership refused to continue Mr. Centeno's accommodations. As a result, Mr. Centeno

sought EEO counseling and filed a discrimination complaint. After filing a discrimination complaint, Mr. Centeno entered into a settlement agreement with the agency. Less than a year after the settlement, the agency again breached the agreement. Mr. Centeno appealed the agency's breach to the EEOC Office of Federal operations which agreed the agency had breached the agreement. The agency was ordered to comply with the terms of the agreement and Mr. Centeno was given the right to pursue his claims in Federal Court.

2. This action seeks declaratory, injunctive and other equitable relief from discrimination in employment against the Plaintiff, on account of his disability, pursuant to the Rehabilitation Act of 1973.

## II. JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

4. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 and The Rehabilitation Act, 29 U.S.C. § 701 et seq.

5. The unlawful employment practices described herein concern discriminatory acts that occurred at the Dayton Post Office in Dayton, Ohio. Venue in this Court is proper pursuant to 29 U.S.C. § 626 et seq.

6. Venue is proper pursuant to 28 U.S.C. § 1391. The events described herein occurred within the Southern District of Ohio. Plaintiff's claims arose and all relevant events occurred within Montgomery County, Ohio.

## III. PARTIES

7. The Plaintiff, Jose Centeno, is a citizen of the United States and a resident of Montgomery County, Ohio. At all relevant times the Plaintiff was employed by the agency in

Montgomery County, Ohio. The Plaintiff was a federal employee within the meaning of 29 U.S.C. §626 et seq.

8. The Defendant Megan J. Brennan is Postmaster General of the United States Postal Service. She is sued in her official capacity as head of the agency, and, as such, is amenable to suit.

### IV. EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

9. Plaintiff made a timely report of discrimination to an agency Equal Employment Opportunity (hereinafter EEO) Counselor and the agency processed the complaint. The agency and Plaintiff settled the complaint in mediation on September 18, 2013. The agency subsequently breached that settlement agreement. Plaintiff filed an appeal of that breach with the Equal Employment Opportunity Commission Office of Federal Operations (hereinafter EEOC OFO). The EEOC OFO determined that the agency had in fact breached the agreement with Plaintiff and ordered that the agency take appropriate action to correct the breach. The EEOC OFO also gave Plaintiff the right to pursue his claims in federal court. A copy of the EEOC OFO decision is attached hereto and incorporated herein, as **Exhibit 1**.

### V. STATEMENT OF FACTS

10. Plaintiff is a retired veteran that joined the United States Postal Service (hereinafter "agency") on March 15, 1996.

11. Plaintiff was hired as a letter carrier and maintained that position throughout his employment with the agency.

12. Throughout his employment with the agency, Plaintiff was a qualified employee that could perform the essential functions of his position as a letter carrier.

13. Plaintiff suffered multiple eye injuries and illnesses during his employment with the agency.

14. The eye injuries and illnesses suffered by Plaintiff affected his eyesight.

15. In order to mitigate the severity of the injuries and illnesses to his eyes, Plaintiff was required to administer medication in the form of eye drops.

16. Plaintiff was required to administer medicated eye drops up to three times per day.

17. As a result of his eye injuries and illnesses, Plaintiff is a disabled person as that term is defined in the Rehabilitation Act of 1973.

18. Plaintiff's disability affected one or more of his major life activities including work.

19. The agency treated Plaintiff as having a disability that affected one or more of his major life activities.

20. In order to administer his medicated eye drops, Plaintiff sought an accommodation from the agency.

21. Plaintiff sought to be accommodated by the agency by utilizing standard breaks, comfort breaks, and his lunch break to properly administer his eye drops.

22. Defendant allows standard breaks of ten (10) minutes in duration to all letter carriers as negotiated in the collective bargaining agreement.

23. Defendant allows lunch breaks of thirty (30) minutes in duration to all letter carriers as negotiated in the collective bargaining agreement.

24. Defendant allows comfort stops or comfort breaks of undetermined duration to all letter carriers for necessary activities, such as using the restroom, which may occur while working.

25. The agency initially granted Plaintiff the requested accommodation and he continued to work productively without incident.

26. Plaintiff was able to perform the essential functions of his position with the requested accommodation.

27. During the summer of 2012, agency management changed and the new acting Customer Service Manager, Andrew Glancy, decided to end Plaintiff's accommodation.

28. Plaintiff made numerous requests of the District Reasonable Accommodation Committee to permit him to be accommodated but those requests went unanswered.

29. Plaintiff had to seek counseling from the agency EEO office about the agency's refusal to continue an accommodation that was working.

30. Plaintiff subsequently filed an EEO complaint (agency number 4C-450-0116-12) regarding the agency's denial of the requested accommodation.

31. Plaintiff retained counsel to assist him with his internal agency EEO complaint of discrimination.

32. On or about September 18, 2013, Plaintiff entered into a settlement agreement with the agency.

33. A copy of the settlement agreement is attached hereto and incorporated herein, as **Exhibit 2**.

34. Once Plaintiff settled his complaint, he resumed working in the manner he had when he was previously accommodated.

35. Plaintiff's local Manager, Brett Strange, informed the local supervisor, Dawn Grilliott, that Plaintiff had settled his case and that they had to honor the terms of the settlement.

36. In the spring of 2014, there was a change in management at Plaintiff's work location.

37. The new local management continued to honor Plaintiff's settlement agreement.

38. Plaintiff's former supervisor, Dawn Grilliott, was at the district office in 2014 acting in the position of labor relations specialist.

39. Because she had previously been Plaintiff's supervisor, Dawn Grilliott was intimately aware of the settlement agreement, its terms, and how Plaintiff used the accommodation.

40. In November of 2014, Plaintiff was called into a meeting with his union, local management, and acting labor relations specialist Dawn Grilliott.

41. Dawn Grilliott informed Plaintiff at the November 2014 meeting that his agreed upon accommodation would no longer be honored and instead his unpaid lunch period would be extended.

42. Plaintiff objected to the change and informed the agency that he believed this was a breach of the agreement.

43. Plaintiff continued to work in the manner in which he had agreed in the settlement while watching for a change in his unpaid scheduled lunch period.

44. In the early part of 2015, Dawn Grilliott became Plaintiff's acting local manager and again began harassing Plaintiff about his accommodation.

45. On or about April 27, 2015, Plaintiff noticed that his lunch break was being extended from thirty 30 minutes to sixty (60) minutes.

46. Counsel for Plaintiff began the notification process that was called for in the settlement agreement to allow the agency the opportunity to correct the breach.

47. In a final agency decision dated July 13, 2015, the agency refused to cure the breach, challenged the timeliness of the Plaintiff's appeal, and denied their actions constituted a breach.

48. When the agency refused to cure the breach, Plaintiff appealed the breach to the EEOC OFO.

49. On December 9, 2015, the EEOC OFO issued a decision in which they agreed that a breach of the settlement agreement had occurred.

50. In the EEOC OFO decision, the agency was ordered to comply with the terms of the settlement agreement.

51. As the direct and proximate cause of Defendant's actions and inaction, which were accomplished with willful intent, bad faith and malice, Plaintiff has suffered injury and damages, including, but not necessarily limited to, lost wages and benefits, humiliation, embarrassment, inconvenience, mental and emotional suffering, and loss of enjoyment of life.

## VI. CAUSES OF ACTION

### COUNT I
### Disability Discrimination in violation
### of the Rehabilitation Act of 1973

52. Plaintiff hereby incorporates paragraphs 1 through 52, above, as if fully rewritten herein.

53. Throughout his employment with the agency, Plaintiff was able to perform the essential functions of his position as a letter carrier.

54. Plaintiff suffers from an injury and illness with his eyes that affects one or more of his major life activities including work.

55. Defendant treated Plaintiff as an individual with a physical disability that affected one or more of his major life activities including work.

56. Plaintiff requested an accommodation from Defendant that was not a hardship for Defendant.

57. After initially accommodating Plaintiff, Defendant withdrew the accommodation and otherwise harassed Plaintiff about the accommodation and the settlement agreement involving the accommodation.

58. The discrimination directed toward Plaintiff was sufficiently severe to affect the terms, conditions, and privileges of employment, and matters directly or indirectly related to employment.

59. The discrimination directed toward Plaintiff was based on his disability.

60. The discrimination directed toward Plaintiff was conscious, purposeful, intentional, malicious, or sufficiently reckless to warrant an award of punitive damages.

61. Defendant was aware of the severe and pervasive discriminatory actions to which Plaintiff was subjected by Defendant's employees who were acting as managers within the course and scope of their employment when the discrimination occurred.

62. Defendant was aware, or should have been aware, of the disability discrimination, yet failed to take immediate and appropriate corrective action.

63. Defendant is charged with knowledge of the discriminatory conduct of its employees, as it was committed by Defendant's managerial and supervisory employees.

64. The discrimination directed toward Plaintiff was sufficiently severe and pervasive to create a work environment that a reasonable person would find to be hostile and abusive.

65. Defendant is liable for Plaintiff's injuries and damages.

66. As a direct and proximate result of Defendant's actions, Plaintiff suffered injury and damages.

**COUNT II**
**Retaliation in violation of the**
**Civil Rights Act of 1964**

67. Plaintiff hereby incorporates paragraphs 1 through 67, above, as if fully rewritten herein.

68. Plaintiff opposed a discriminatory action by Defendant when it denied him a reasonable accommodation.

69. Defendant was aware of Plaintiff's opposition to the discriminatory activity through the internal EEO office.

70. After initially settling Plaintiff's complaint, Defendant took adverse action against Plaintiff by denying him the agreed upon accommodation.

71. There is a causal connection between Defendant's actions toward Plaintiff and his settlement agreement including comments made by management officials of Defendant.

72. The retaliation directed toward Plaintiff was sufficiently severe to affect the terms, conditions, and privileges of employment, and matters directly or indirectly related to employment.

73. The retaliation directed toward Plaintiff was based on his engaging in protected activity.

74. The retaliation directed toward Plaintiff was conscious, purposeful, intentional, malicious, or sufficiently reckless to warrant an award of punitive damages.

75. Defendant was aware of the severe and pervasive retaliatory actions to which Plaintiff was subjected by Defendant's employees who were acting as managers within the course and scope of their employment when the retaliation occurred.

76. Defendant was aware, or should have been aware, of the retaliation, yet failed to take immediate and appropriate corrective action.

77. Defendant is charged with knowledge of the retaliatory conduct of its employees, as it was committed by Defendant's managerial and supervisory employees.

78. The retaliation directed toward Plaintiff was sufficiently severe and pervasive to create a work environment that a reasonable person would find to be hostile and abusive.

79. Defendant is liable for Plaintiff's injuries and damages.

80. As a direct and proximate result of Defendant's actions, Plaintiff suffered injury and damages.

## COUNT III
## Breach of Contract

81. Plaintiff hereby incorporates paragraphs 1 through 81, above, as if fully rewritten herein.

82. Plaintiff and Defendant participated in the agency EEO mediation process related to internal complaint number 4C-450-0116-12.

83. Plaintiff and Defendant entered into a settlement agreement as a result of the mediation process.

84. The settlement agreement agreed to by Plaintiff and Defendant constitutes a contract between the parties.

85. Defendant violated the terms of the settlement agreement when they chose to deny Plaintiff the accommodations agreed to.

86. Defendant's violation of the settlement agreement was a breach of that agreement.

87. As a direct and proximate result of Defendant's breach of the settlement agreement, Plaintiff has suffered injury and damages.

## COUNT IV
## Intentional Infliction of Emotional Distress

88. Plaintiff hereby incorporates paragraphs 1 through 88, above, as if fully rewritten herein.

89. Defendant's discriminatory and retaliatory treatment of Plaintiff was intended to cause Plaintiff emotional distress.

90. Defendant's conduct toward Plaintiff, a disabled veteran, was extreme and outrageous and beyond all bounds of decency.

91. The severe emotional distress caused Plaintiff to suffer both in his work life and in his personal life as the proximate result of Defendant's conduct.

92. Defendant, through the conduct alleged within this Complaint, acted intentionally, willfully, wantonly, or recklessly, and in an extreme and outrageous manner.

93. Defendant's actions were the direct and proximate result of Plaintiff's mental and emotional injuries.

94. Plaintiff's mental and emotional anguish was serious and of a nature that no reasonable person should be expected to endure it.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant in an amount exceeding one hundred thousand dollars ($100,000), together with pre-judgment interest, interest, costs herein expended, compensatory damages, punitive damages, reasonable attorney fees, and such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Julius L. Carter
Julius L. Carter (#0084170)
Julius L. Carter Co., LPA
130 W. Second Street Suite 1622
Dayton, OH 45402
(937) 222-7900
(937) 222-7910 Fax
jcarter@juliuscarter.com
*Trial Attorney for Plaintiff*

## JURY DEMAND

Now comes the Plaintiff and hereby demands a trial by Jury of all issues so triable.

Respectfully submitted,

/s/ Julius L. Carter
Julius L. Carter (#0084170)
Julius L. Carter Co., LPA
130 W. Second Street Suite 1622
Dayton, OH 45402
(937) 222-7900
(937) 222-7910 Fax
jcarter@juliuscarter.com
*Trial Attorney for Plaintiff*