## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JOSE A. CENTENO, | : | Case No. 3:16-cv-00087 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Chief Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| MEGAN J. BRENNAN, | : | |
| Postmaster General, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.  Introduction

Plaintiff Jose A. Centeno, an employee of the United States Postal Service, brings this case raising claims of disability discrimination, retaliation, breach of contract, and intentional infliction of emotional distress.  The case is before the Court upon Defendant's Motion to Dismiss (Doc. #8), Centeno's Response (Doc. #10), Defendant's Reply (Doc. #14), an Exhibit Centeno filed with leave of Court (Doc. #13), and the record as a whole.

### II.  Factual Background

At this stage of the case, the Court accepts the Complaint's well-pleaded factual allegations as true, construes it in Centeno's favor, and draws "all reasonable inferences"

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

in his favor.  *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016).  Doing so reveals the following.

Throughout his many years of employment with the Postal Service, Centeno worked as a letter carrier.  Unfortunately, during his employment with the Postal Service, he suffered multiple eye injuries and illnesses that affected his eyesight.  Treatment of his eye injuries and illnesses required him to use medicated eye drops up to three times a day.  Centeno asserts that due to his eye injuries and illnesses, "he is a disabled person as that term is defined in the Rehabilitation Act of 1973."  (Doc. #1, *PageID* #4, ¶17).

Centeno asked the Postal Service to accommodate his eye disability and his resulting need to use medicated eye drops.  The Postal Service granted the accommodation he asked for by permitting him to administer the eye drops during his breaks.  The accommodation allowed Centeno to be able to perform the essential functions of his letter-carrier job.

A problem arose in the Summer of 2012 when "agency management changed and a new Customer Service Manager … decided to end Plaintiff's accommodation."  (Doc. #1, *PageID* #4, ¶27).  After Centeno's initial efforts to resolve this problem were unsuccessful, he retained an attorney and filed a Complaint with the Postal Service's Equal Employment Opportunity office (EEO office).  On September 18, 2013, Centeno and the Postal Service entered into a written settlement agreement.  Under its terms, he "resumed working in the manner he had when he was previously accommodated."  *Id*. at ¶34.

At first, Centeno's accommodation continued without a problem.  In the spring of 2014, management changed at Centeno's local Postal Service location.  The new local management continued to honor the September 2013 settlement agreement.

Trouble began to brew in November 2014 when Centeno was called into a meeting with his union representative, local Postal Service management, and acting labor-relations specialist Dawn Grilliott, who had previously been Centeno's supervisor. During the meeting, Grilliott told Centeno that "his agreed upon accommodation would no longer be honored and instead his unpaid lunch period would be extended." *Id*. at ¶41. Centeno objected to the change and informed the Postal Service that this was a breach of the September 2013 settlement agreement.

Centeno "continued to work in the manner in which he had agreed in the settlement while watching for a change in his unpaid scheduled lunch period." *Id*. at ¶43. Initially, there was no change in his work scheduled work breaks.  In early 2015, Grilliott became Centeno's acting local manager, and she began harassing him about his accommodation.  On approximately April 27, 2015, Centeno noticed that his lunch break was being extended from thirty to sixty minutes.

Centeno asserts that his counsel began the notification process required by the terms of the Settlement Agreement.  In July 2015, the Postal Service's EEO office issued a final agency decision refusing to cure the breach and denying its actions constituted a breach.  *Id*. at ¶47.

Centeno appealed to the EEOC's Office of Federal Operations [EEOC OFO].  "On December 9, 2015, the EEOC OFO issued a decision in which they agreed that a breach

3

of the settlement agreement had occurred." *Id*. at ¶48.  According to Centeno's

Complaint in this case:

> As the direct and proximate cause of Defendant's actions and
> inaction, which were accomplished with willful intent, bad faith and
> malice, Plaintiff has suffered injury and damages, including, but not
> necessarily limited to, lost wages and benefits, humiliation, embarrassment,
> inconvenience, mental and emotional suffering, and loss of enjoyment of
> life.

*Id*. at ¶51.

## III.  Discussion

### A.  Pleading Standards

"[A] complaint must contain 'a short and plain statement of the claim showing that

the pleader is entitled to relief.'"  *16630 Southfield Ltd. Partnership v. Flagstar Bank,*

*F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (quoting, in part, Fed. R. Civ. P. 8(a)).  "To

survive a motion to dismiss, a litigant must allege enough facts to make it plausible that

the defendant bears legal liability.  The facts cannot make it merely possible that the

defendant is liable; they must make it plausible.  Bare assertions of legal liability absent

some corresponding facts are insufficient to state a claim."  *Agema v. City of Allegan*, 826

F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B.  Defendant's Documents

Defendant contends that dismissal of Centeno's Complaint is warranted under

Fed. R. Civ. P. 12(b)(6).  In support, Defendant's Motion relies on sworn Declarations

and attached documents.  Centeno argues that the Court should not consider the

documents Defendant attached to its Motion to Dismiss because Defendant "selectively

4

attached many different documents that are unrelated to the claims in the complaint."
(Doc. #10, *PageID* #163).  He further argues that Defendant's documents were never
mentioned in the Complaint.

"'In determining whether to grant a Rule 12(b)(6) motion, the court primarily
considers the allegations in the complaint, although matters of public record, orders,
items appearing in the record of the case, and exhibits attached to the complaint, also may
be taken into account.'" *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001)
(citation omitted); *see Clark v. Donahoe*, 2012 WL 3224097, at *4 (6th Cir. Aug. 6,
2012) (the court may take judicial notice of administrative decisions as matters of public
record).  Additionally, the Court "may also consider documents that a defendant attaches
to a motion if the documents 'are referred to in the plaintiff's complaint and are central to
her claims' without converting the motion to one for summary judgment." *McLaughlin
v. CNX Gas Co., LLC*, 639 F. App'x 296, 298 (6th Cir. 2016) (citations omitted).

Centeno's Complaint refers to and is accompanied by two documents:  a copy of
the September 2013 settlement agreement and a copy of the EEOC's Office of Federal
Operations' (OFO's) December 2015 decision.  It is proper to consider these documents
without converting Defendant's Motion to Dismiss into a Motion for Summary
Judgment.  *See Amini*, 259 F.3d at 502.  Centeno has also filed a copy of the Postal
Service's July 13, 2015 decision.  It is therefore safe to assume that he seeks
consideration of this decision without converting Defendant's Motion to a Motion for
Summary Judgment.

Defendant has attached three sworn Declarations to its Motion to Dismiss.  The first is by Lori L. Markle, an attorney with the Postal Service.  Her statements and Exhibits narrate the story of how Centeno's formal EEO complaint proceeded administratively through the parties' September 2013 settlement agreement and the dismissal of his EEO complaint.  (Doc. #8, *PageID* #s 66-69).  The second sworn Declaration is by William C. Coutu, the Manager of EEO Compliance and Appeals for the Region encompassing Dayton.  Coutu's Declaration and attached Exhibits describe the procedural background of Centeno's claims beginning with his July 2015 letter to the Postal Service's EEO Compliance and Appeals Office.  This letter alerted the EEO Office to Centeno's assertion that the Postal Service had breached the September 2013 settlement agreement.  Coutu's Declaration and Exhibits continue to document the procedural background of Plaintiff's claims concluding with the OFO notice in March 2016 that the Postal Service had complied with the corrective action previously ordered (in the OPO's December 2015 decision).  Both Markle's and Coutu's Declarations and attached Exhibits walk the same administrative road described in the Complaint and concern matters that are central to Centeno's claims.  These matters include his claims that Defendant breached the September 2013 settlement agreement, discriminated against him based on his disability, retaliated against him for engaging in protected activity, and exhausted his administrative remedies.  *See* Doc. #1, *PageID* #s 6-9.  As a result, Defendant's documents may be considered without converting its Rule 12(b)(6) Motion into a Motion for Summary Judgment.  *See Amini*, 259 F.3d at 502 (proper to consider EEOC charge attached to Complaint); *see also Weiner v. Klais and Co., Inc.*, 108 F.3d

6

86, 89 (6th Cir. 1997)[2] ("[A] defendant may introduce certain pertinent documents if the plaintiff fails to do so…. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.").  Conversion to summary judgment is also unwarranted as to the administrative decisions attached to Defendant's Motion because the Complaint refers to these and such decisions are properly considered at this stage of the case.  *See Clark v. Donahoe*, 2012 WL 3224097, at *4 (S.D. Ohio Aug. 6, 2012) (the court may take judicial notice of administrative decisions as matters of public record).

Centeno disagrees, arguing that the Complaint's mere mention of his exhaustion of administrative remedies does not support Defendant's selective portions of the non-public EEO file.  This contention lacks merit because Centeno's claims, as set forth in the Complaint, describe events confirmed by Defendant's documents, particularly the breach of the September 2013 settlement agreement and the EEOC OFO's decision issued after the breach.  Centeno, moreover, does not cite any case is support of his challenge to Defendant's present reliance on the documents, and he does not challenge the authenticity of the documents.

In any event, conversion to summary judgment is also unwarranted because the following analysis of the parties' contentions construes in Centeno's favor pertinent information gleaned from Defendant's documents.  The analysis, moreover, does not rely

---

[2] *overruled on other grounds, Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002).

on the information set forth in many documents including Exhibit C (Kimberly A. Herbst's Declaration) and the documents attached to Exhibit A.

### C.  Centeno's Claims

Count I of Centeno's Complaint claims that Defendant discriminated against him based on his disability in violation of the Rehabilitation Act of 1973 by withdrawing the accommodation established by the September 2013 settlement agreement and "otherwise harass[ing]" him about the accommodation and the settlement agreement.  (Doc. #1, *PageID* #7).  Centeno further claims that "the discrimination directed toward [him] was sufficiently severe and pervasive to create a hostile work environment that a reasonable person would find hostile and abusive."  *Id.*

Count II of Centeno's Complaint asserts that Defendant retaliated against him in violation of the Civil Rights Act of 1964 "by denying him his agreed upon accommodation."  *Id.* at 8.  He further asserts that the retaliation was sufficiently severe and pervasive to create a hostile and abusive work environment.  *Id.*

Centeno's Count III raises a breach-of-contract claim based on the assertion that Defendant breached the September 2013 settlement agreement.  Count IV asserts intentional infliction of emotional distress.

Defendant attacks Centeno's Complaint on several grounds, including lack of exhaustion, sovereign immunity, and waiver.

## **Exhaustion**

Defendant argues that this Court lacks subject matter jurisdiction over Centeno's discrimination and retaliation claims because he failed to exhaust his administrative remedies.

"Plaintiffs bringing claims under either Title VII or the Rehabilitation Act must exhaust the administrative remedies available to them, prior to filing suit in a federal court." *Flowers v. Potter*, No. 3:05cv052, 2008 WL 687630, at *7 (S.D. Ohio, Mar. 11, 2008) (Rice, D.J.); *see Taylor v. Donahue*, 452 Fed. App'x 614, 617 (6th Cir. 2011) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 832-33 (1976)) (other citation omitted). "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations." *Steiner v. Henderson*, 354 F.3d 432, 434-45 (6th Cir. 2003) (citation omitted).

While Defendant's exhaustion contentions urge dismissal of Centeno's discrimination and retaliation claims for lack of jurisdiction, the better view is that exhaustion is a condition precedent to proceeding in federal court. *See Lockett v. Potter*, 259 Fed. App'x 784, 786 (6th Cir. 2008) (citing *McFarland v. Henderson*, 307 F,3d 402, 406 (6th Cir. 2002) ("exhaustion requirements pursuant to Title VII are not jurisdictional prerequisites …."")); *see Steiner*, 354 F.3d at 435 ("The forty-five day filing period is not a jurisdictional prerequisite, and can be tolled where principles of equity demand it."). Regardless, the exhaustion requirement rests on a solid foundation:

> The requirement that the plaintiff exhaust remedies prior to instituting suit is intended to ensure that the Commission will have been afforded an opportunity to attempt conciliation and voluntary settlement, "the preferred means for resolving employment discrimination disputes." Courts have thus held that an employee who does not initially follow the administrative steps outlined in the Code and Regulations is precluded from bringing an action before a federal court. These rules also apply to retaliation claims that are based on conduct that occurred before the filing of the original charge.

*Flowers*, 2008 WL 697630, at *7 (citing, in part, *Tisdale v. Fed. Express Corp*., 415 F.3d 516, 527 (6th Cir. 2005)) (other citations omitted).

Centeno ended the administrative processing of his underlying original EEO complaint when he entered into the settlement agreement with the Postal Service on September 18, 2013. According to Centeno's Complaint, Defendant discriminated against him after the parties' agreed to settle his underlying EEO claims—*i.e*., after September 18, 2013. For example, Centeno alleges that in early 2015 Grilliott became his acting local manager and began harassing him about his disability accommodation. (Doc. #1, *PageID* #6, ¶44). The Complaint asserts that "[a]fter initially accommodating Plaintiff, Defendant withdrew the accommodation and otherwise harassed Plaintiff about the accommodation and the settlement agreement involving the accommodation." *Id*. at ¶57. The Complaint further asserts that Defendant retaliated against Centeno by denying him the agreed upon accommodation, by harassing him, and by engaging in severe and pervasive retaliatory actions though employees who were managers. *Id*. at ¶s 74-75. Through these and similar post-September 2013 allegations, Centeno alleges in his Complaint that disability discrimination and retaliation resurfaced after the parties entered their settlement agreement on September 18, 2013.

10

What steps did Centeno take to exhaust these discrimination and retaliation claims before bringing the instant case? On July 2, 2015, his counsel notified the Postal Service in writing that it "has breached the [September 2013] settlement agreement …." (Doc. #8, Exh. B-1, *PageID* #108). Counsel described the breach and asked the Postal Service, pursuant to 29 C.F.R. § 1614.504, to comply with the settlement agreement. Counsel's notice was indeed consistent with 29 C.F.R. § 1614.504(a), which provides:

> If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance .... The complainant may request that the terms of the settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased.

After the Postal Service denied Centeno's request for compliance with the settlement agreement, he appealed to the EEOC OFO asking "to have his complaint reinstated from the point where it was terminated…." (Doc. #8, Exh. B-4, *PageID* #129). Consequently, although Centeno did not ask, pursuant to § 1614.504(a), the Postal Service to reinstate his discrimination and retaliation claims, he did present that request to the EEOC.

Defendant argues that Centeno failed to exhaust his discrimination and retaliation claims in two ways: (1) he failed to request, pursuant to § 1614.504(a), that the Postal Service reinstate his original EEO complaint, and (2) he failed to obtain a determination from the EEOC's Office of Federal Operations to reinstate his original EEO complaint. Defendant points out that if Centeno had obtained a reinstatement decision from the EEOC, he could have pursued his original EEO complaint (which alleged disability

11

discrimination) "'from the point the processing ceased …,'" meaning from the date of the September 18, 2013 settlement agreement.  (Doc. #8, *PageID* #59) (quoting 29 C.F.R. § 1614.504).  In support of this, Defendant quotes *Taylor v. Geithner*, 703 F.3d 326 (6th Cir. 2013), which explains:

> Section 1614.504 allows a complainant either to seek injunctive relief, i.e., specific performance of the settlement agreement, within the agency structure or to request what is essentially an unraveling of the settlement agreement so that the complainant can pursue the underlying discrimination claims, which can be reviewed in federal court.

703 F.3d at 335.  *Taylor* thus indicates that a complainant who asks his or her agency to unravel their settlement agreement has exhausted his or her administrative remedies.  *Taylor*, however, did not address the present situation where the claimant (Centeno) asked his agency to specifically perform, rather than unravel, the terms of their settlement agreement, yet later asked the EEOC to unravel the settlement agreement and reinstate his original EEO complaint from the point it was terminated (by the September 2013 settlement agreement).  *See* Doc. #8, Exh. B-4, *PageID* #129.  Was this sufficient to exhaust his administrative remedies?

The parties' disagreement on this issue takes an unexpected turn at this point because Centeno's Memorandum introduces new information that does not appear in his Complaint.  He states:

> Plaintiff alleged additional acts of discrimination and retaliation when he reported the settlement breach.  Plaintiff sought a new complaint for the new acts of discrimination that led to the breach, but the agency refused to accept the new complaints.  Instead, the agency decided that the new allegation[s] were part of the breach of settlement claims.  The agency was required to process the new allegation as either new complaints under 29 C.F.R. 1614.106 or new complaints under 29 C.F.R. 1614.204.  Because

12

the agency refused to process these new complaints, Plaintiff has exhausted
his administrative remedies.

(Doc. #10, *PageID* #164 (citing Exhibit 1)).  Centeno's allegation about seeking a new

EEO complaint, if accepted as true and construed in his favor, shows that the Postal

Service essentially prevented Centeno—through no fault of his own—from proceeding

with his underlying discrimination and retaliation claims at the agency level.  The Postal

Service's July 13, 2015 decision might support this because it acknowledges receipt of

Centeno's request for counseling, and it states that the decision would treat the

counseling request  as a breach allegation under § 1614.504.  The Postal Service also

informed Centeno that his counseling request "will not be processed as a new counseling

request."  (Doc. #13).   In light of this and Centeno's counsel written notice, the record at

this point in the litigation indicates that Centeno followed the initial administrative

procedures in 29 C.F.R. 1614.504(a) and thereby provided the Postal Service with an

opportunity to investigate and address the underlying claims.

Yet, as noted previously, Centeno's Complaint does not describe the scenario he

includes in his Memorandum.  He overcomes this problem by alternatively seeking, in his

Memorandum, "leave of Court to amend any deficiencies."  (Doc. #10, *PageID* #166).

Granting Centeno leave to amend his complaint is warranted because such leave is

"freely granted as justice so requires."  Fed. R. Civ. P. 15(a)(2).  Additionally, although

futility will defeat an attempt to amend a complaint, *Miller v. Calhoun County*, 408 F.3d

803, 817 (6th Cir. 2005), granting Centeno leave to amend is warranted because the

13

amendment would not be futile. This is so when the new allegations, accepted as true and construed in Centeno's favor, show he exhausted his remedies at the agency level.[3]

This leaves Centeno's effort to exhaust his discrimination and retaliation claims with the EEOC's OFO. Defendant contends:

> If Plaintiff had obtained a determination from OFO that his underlying EEO complaint should be reinstated, he could have pursued his underlying discrimination and retaliation claims "from the point the processing ceased." 29 C.F.R. § 1614.504. Plaintiff, however, did not obtain such a determination and, thus, he has not exhausted his administrative remedies.

(Doc. #8, *PageID* #59). This, however, seems to overlook that the Brief Centeno's counsel submitted to the EEOC OFO asking "to have his complaint reinstated from the point where it was terminated…." (Doc. #8, Exh. B-4, *PageID* #129). Through this request, Centeno sought relief that is available to claimants under 29 C.F.R. § 1614.504(a). Doing so, he provided the EEOC OFO with an opportunity to reinstate his original EEO complaint after which he could pursue his post-September 2013 discrimination and retaliation claims.

A further consideration emerges from the Office of Federal Operations' conclusion that the Postal Service had breached the September 2013 settlement agreement and from its order directing the Postal Service to comply with certain terms of the settlement agreement. (Doc. #1, *PageID* #s 14-15). Although the Office of Federal

---

[3] This might not put an end to whether Centeno properly exhausted his claim at the agency level because discovery might or might not support his allegations that he sought a new EEO complaint from the Postal Service but the Postal Service refused to accept it. At present, his new allegations are enough to avoid a Rule 12(b)(6) dismissal of his discrimination and retaliation claims that arose after the September 2013 settlement agreement.

Operations recognized that Centeno wanted his original EEO complaint reinstated from the point where it had been terminated, its Decision chose enforcement of the settlement agreement over reinstatement of his original EEO complaint. Having thus presented the EEOC's Office of Federal Operations with his claims and his request to reinstate his original EEO complaint, these steps to exhaust administrative remedies cannot be reasonably faulted. Centeno further points out, correctly, that the Office of Federal Operations found the Postal Service in breach of the September 2013 settlement agreement. It could, therefore, have granted his requested remedy by directing the Postal Service to reinstate his underlying discrimination and retaliation claims and process them from September 18, 2013 forward. As a result, the steps Centeno took to exhaust gave both the EEOC and the Postal Service an opportunity to investigate and voluntarily settle his post-September 2013 claims before federal judicial review.

Defendant relies on *Fairfax v. Astrue*, No. 09-2160, 2010 WL 4703554 (E.D. Pa. Nov. 18, 2010) as an example of a case where a district court found that the plaintiff failed to exhaust his discrimination claims even though he presented them to the EEOC. The failure to exhaust occurred in *Fairfax* because the plaintiff failed to present any claims to the agency's (the Social Security Administration's) EEO Director and had instead "bypassed the EEO Director completely." *Id*. at *4. The present case is unlike *Fairfax* because Centeno did not completely bypass the Postal Service EEO. Rather, his allegations reveal that he sufficiently alerted them to his claims and provided them with a reasonable chance to attempt conciliation and settlement. Consequently, Defendant's reliance on *Fairfax* is misplaced.

15

Defendant also relies on *Hernandez v. Donovan*, 710 F.Supp. 2d 1153 (D. New Mexico 2010), which presents another failure-to-exhaust situation.  In *Hernandez*, the plaintiff failed to exhaust by framing the remedies he sought as alternatives.  In his appeal to the EEOC, the plaintiff's brief "sought reinstatement of the complaint only in the event that the Commissioner could not determine the meaning of the terms of the [previously entered Settlement] Agreement."  *Id*. at 1158.  His failure to exhaust thereby arose because "he requested a reinstatement of his complaint only as an alternative—one the Commission did not entertain."  *Id*.  In the present case, Centeno asked the EEOC's Office of Federal Operation "to have his complaint reinstated from the point where it was terminated."  (Doc. #8,Exh. B-4,  *PageID* #129).  Unlike the plaintiff in *Hernandez*, Centeno did not seek this remedy as an alternative to enforcement of the settlement agreement.  Defendant's reliance on *Hernandez* is therefore misplaced.

Defendant contends that even if this Court finds that Centeno exhausted his administrative remedies, he has not identified any new discriminatory conduct beyond a breach of the terms of his settlement agreement.  This overlooks the allegations in Centeno's Complaint concerning Grilliott's harassment of him after she became his acting local manager.  Counts I and II of Centeno's Complaint assert claims of severe and pervasive disability harassment and retaliatory harassment.  Construing his Complaint in his favor, these claims arose after the September 2013 settlement agreement and thus constitute new discriminatory and retaliatory claims.

Accordingly, Rule 12(b)(6) dismissal of Counts I and II of the Complaint for failure to exhaust is unwarranted.

## Sovereign Immunity

Centeno's breach-of-contract claim, as described in his Complaint is based on Defendant's alleged breach of the September 2013 settlement agreement. The Complaint is silent on the legal basis for this claim, although it incorporates all the previous numbered paragraphs in the Complaint.

Defendant contends, relying on *Taylor v. Geithner*, 703 F.3d 328, 333 (6th Cir. 2013), that sovereign immunity bars Centeno's breach-of-contract claim. In *Taylor*, the plaintiff sued her federal employer, the Internal Revenue Service, for breach of a settlement agreement. *Taylor* addressed "whether Congress waived sovereign immunity for breach-of-settlement-agreement claims brought under Title VII against the federal government as employer." 703 F.3d at 333. To resolve this issue, the Court of Appeals began with the well-established principle that "'[t]he United States, as sovereign, is immune from suit save as it consents to be sued….'" *Id.* (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The Court of Appeals then recognized that the government waives its sovereign immunity only when Congress explicitly does so with "'clear, express, and unambiguous …'" statutory language. *Id.* Waiver "'cannot be implied from vague language.'" *Id.* (quoting *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1325 (6th Cir. 1993)).

Turning to Title VII, *Taylor* observed its previous holding that Congress had written an explicit waiver of sovereign immunity into Title VII for discrimination claims against the federal government. *Id.* at 333. Yet, this did not resolve the separate issue presented in *Taylor* where the Plaintiff wanted to stretch the waiver of Title VII

17

discrimination claims to her claim that the IRS had breached the terms of their settlement agreement.  The Court of Appeals declined to do so, finding that no language in Title VII that explicitly or expressly waived the government's sovereign immunity against Title VII claims for breach of settlement agreement.  *Id*. at 334-36.

In the present case, *Taylor* supports Defendant's position that Title VII's waiver of sovereign immunity on discrimination claims does not encapsulate Centeno's Title VII breach-of-settlement claim.  *See id*. at 334-35.  As a result, sovereign immunity bars Centeno's Title VII claim that the Postal Service breached the September 2013 settlement agreement.  *See id*.

Centeno maintains that the facts of the present case are substantially different in many respects from those in *Taylor*.  Rather than parse each difference Centeno describes, *see* Doc. #10, *PageID* #s 165-66, it suffices to recognize that even assuming, in his favor, that those differences exist, they do not alter the legal conclusion the Sixth Circuit reached in *Taylor*:  Congress did not expressly waive sovereign immunity for breach-of-settlement-agreement claims brought under Title VII.  *Taylor*, 703 F.3d at 334-35.

Accordingly, sovereign immunity bars Count III of Centeno's complaint.

## **Waiver**

Defendant contends that in the September 2013 settlement agreement, Centeno waived his discrimination and retaliation claims by agreeing to dismiss them with prejudice and by agreeing to waive his right to pursue them in federal court.  This is correct.  In the settlement agreement, Centeno agreed "to withdraw and have dismissed

18

**with** prejudice, his EEO complaint …."  He also agreed "to forever give up and waive all claims and issues asserted in… [his EEO complaint] in all forums."  (Doc.# 1, Exh. 2, *PageID* #22) (emphasis in original).  As a result, Centeno has waived his discrimination and retaliation claims to the extent they are based on the allegations and claims he raised in his original EEO complaint.

This, however, does not mean that Centeno waived his discrimination and retaliation claims based on events that allegedly occurred after the parties entered the settlement agreement on or around September 18, 2013.  The settlement agreement specifies: "This waiver does not prohibit the Complainant from filing future claims concerning any events that this Agreement is executed by the parties."  *Id.*  In light of this, Centeno did not waive his discrimination and retaliation claims to the extent they are based on events that occurred after September 18, 2013.

Defendant maintains that Centeno did not file a new EEOC complaint alleging discrimination or retaliation based on alleged events that occurred after the settlement agreement in September 2013.  Centeno contends, in his Memorandum, that he "alleged additional acts of discrimination and retaliation when he reported the settlement breach. [He] sought a new complaint for the new acts of discrimination that led to the breach, but the agency refused to accept these new complaints."  (Doc. #10, *PageID* #164).

### Intentional Infliction of Emotional Distress

Defendant contends that Centeno's claim of intentional infliction of emotional distress is precluded by Title VII and by his failure to exhaust his remedies under the Federal Tort Claims Act.  Centeno responds with factual allegations  in support of his

intentional infliction of emotional distress, but he does not counter Defendant's arguments or cite to pertinent case law opposing Defendant's arguments. (Doc. #10, *PageID* #166).

Although Defendant relies on Title VII, which applies to Count II of the Complaint, Count I asserts violations of the Rehabilitation Act of 1973. It is therefore more accurate to view the issue under Count I as, whether the Rehabilitation Act precludes Centeno's intentional infliction of emotional distress claim. Perhaps it does, given that "the 'Rehabilitation Act is a federal employee's exclusive remedy for employment related discrimination based on a disability.'" *Lyons v. Donahoe*, 2016 WL 1070856, at *6 (S.D. Ohio March 16, 2016) (Rice, D.J.) (quoting *Plautz v. Potter*, No. 04-6105, 156 F. App'x 812, 815 (6th Cir. 2005)). But the parties do not squarely address this, and there is no need to venture there in this case because Defendant's exhaustion argument is well taken.

To raise his claim of intentional infliction of emotional distress against the government, Centeno "must establish that the United States has waived its sovereign immunity." *Lundstrum v. Lyng*, 964 F.2d 1142, 1145 (6th Cir. 1991) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The Federal Tort Claims Act (FTCA) creates a limited waiver of the government's sovereign immunity for certain common-law claims. *Id.*; *see* 28 U.S.C. §§ 1346, 2671. "A prerequisite to suit under the FTCA, however, is the exhaustion by the plaintiff of administrative remedies. *Id.* (citing 28 U.S.C. § 2675(a)).

> The FTCA requires claimants to first present the claim to the
> appropriate agency and have the claim finally denied by the agency. *See* 28
> U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 … (1993). In
> order to fulfill this requirement, the claimant must: (1) give written notice
> of the claim sufficient to enable the agency to investigate the claim; and (2)
> place a value (or "sum certain") on the claim. *See Glarner v. U.S., Dep't of
> Veterans Admin.*, 30 F.3d 697, 700 (6th Cir.1994); 28 C.F.R. § 14.2(a).

*Holt v. Morgan*, 79 F. App'x 139, 141 (6th Cir. 2003); *see Cox v. Shinseki*, No.

3:08cv422, 2010 WL 3769105, at *5 (S.D. Ohio Sept. 24, 2010) (Rice, D.J.).

Neither Centeno's Complaint nor his Memorandum in Opposition assert that he

provided written notice to the Postal Service of his claim of intentional infliction of

emotional distress, and he has not placed a value or sum certain on this claim.

Accordingly, Centeno has not exhausted his administrative remedies on his claim

of intentional infliction of emotional distress.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's Motion to Dismiss (Doc. #8) be GRANTED, in part, as to
   Count III and IV of the Complaint;

2. Defendant's Motion to Dismiss (Doc. #8) be DENIED, in remaining part, as
   to Counts I and II of the Complaint; and

3. Plaintiff be granted leave to file an Amended Complaint for the purpose of
   more fully describing the steps he took to exhaust his administrative
   remedies.

December 7, 2016

s/ Sharon L. Ovington
Sharon L. Ovington
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).