# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **JOSE A. CENTENO,** | ) | **Civil Case No. 3:16-CV-00087** |
| | ) | |
| **Plaintiff,** | ) | **District Judge Walter H. Rice** |
| | ) | **Chief Magistrate Judge Sharon L. Ovington** |
| **v.** | ) | |
| | ) | |
| **MEGAN J. BRENNAN,** | ) | |
| **POSTMASTER GENERAL, UNITED** | ) | |
| **STATES POSTAL SERVICE,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>DEFENDANTS' THIRD MOTION TO DISMISS</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(5), and (b)(6), Defendants Megan J. Brennan, Postmaster General of the United States Postal Service ("USPS" or "Agency"), the United States, and Dawn Grilliott, respectfully move for dismissal of Plaintiff Jose A. Centeno's Second Amended Complaint. This Motion is supported by the attached Memorandum in Support and Exhibits A–D.

A separate Motion to Substitute the United States for Ms. Grilliott as a party defendant is also being filed contemporaneously with this motion.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

s/ *Brandi M. Stewart*
BRANDI M. STEWART (0082546)
Assistant United States Attorney
200 West Second Street, Suite 600
Dayton, Ohio 45402
Office: (937) 225-2910 /Fax: (937) 225-2564
E-mail: Brandi.Stewart@usdoj.gov

*Attorney for Defendants Megan J. Brennan,*
*Postmaster General of the USPS, the United States,*
*and Ms. Dawn Grilliott*

<u>**MEMORANDUM IN SUPPORT**</u>

**I.     <u>RELEVANT FACTUAL BACKGROUND</u>**

**A.     Plaintiff initiates and settles his October 2012 EEO claim with the Agency**

On October 15, 2012, Plaintiff initiated an EEO claim against the Postal Service asserting

disability discrimination in violation of the Rehabilitation Act, discrimination based on race and

national origin in violation of Title VII of the Civil Rights Act of 1964, and retaliation for EEO

activity in violation of Title VII.  Plaintiff alleged that after being allowed to take breaks as needed

for months, he was told he had to take annual leave throughout the day in order to administer eye

drops. The relief Plaintiff requested was to be permitted to take breaks as necessary to administer

his eye drops without using annual leave.  (October 5, 2012 EEO Compl. of Discrimination,

attached as Exhibit A.) [1]

On September 18, 2013, Plaintiff entered a Settlement Agreement resolving his complaint

and "allowing him to use his 50 minutes of break/lunch periods as needed throughout the day" to

administer his eye drops.  (Second Am. Compl., Ex. 1 (PAGEID #390).)  The Agreement also

indicated that he could continue "to take comfort breaks as he is currently taking them." (*Id*.)  In

return, Plaintiff agreed to dismiss his EEO complaint ***with prejudice*** and waived all claims and

issues asserted in the EEO complaint, ***in all forums***.  (*Id*. (PAGEID #392).) (Emphasis added.)

The Settlement Agreement provides that the EEOC would retain jurisdiction to enforce the

settlement.  (*Id*. (PAGEID #393).)   The Settlement Agreement also provides that should any

---

[1] In considering this Motion to Dismiss, the Court may consider documents attached to the pleadings or a motion to dismiss if they are (1) undisputed as to authenticity, validity, or enforceability, (2) central to Plaintiff's claim, and (3) referred to in the complaint. See *Waltherr-Willard v. Mariemont City Sch.*, 2013 WL 121970, at *3 (S.D. Ohio Jan. 9, 2013); *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 898 (S.D. Ohio 2013); see also *Stanciel v. Potter*, 2012 WL 4513612, *2 (E.D. Mich Oct.1, 2012) (finding that the Court may consider "any documents referenced in the plaintiff's complaint and central to the plaintiff's claim, even if not attached to the Complaint.").

disputes arise regarding the implementation of the agreement, Plaintiff would provide written notice to the Agency. (*Id*. (PAGEID #394).)

**B.      Plaintiff alleged the Agency breached the 2013 Settlement Agreement**

On April 15, 2014, Plaintiff, through counsel, Julius Carter, sent written notice to the Agency alleging that it was violating the Settlement Agreement by denying him the comfort breaks that he had been taking when he entered the settlement. (Second Am. Compl., Ex. 2.) Plaintiff admits that his concerns were resolved. (*Id*. at ¶ 10 (PAGEID #376).)

Approximately one year later, on April 28, 2015, Plaintiff's counsel, Julius Carter, again alleged that the Agency was violating the Settlement Agreement. (*Id*., Ex. 3.) This time, Plaintiff complained that the Agency was making him take a 60-minute lunch each day. (*Id*.) On May 22, 2015, Plaintiff filed an Information for Pre-Complaint Counseling Form with the Agency's National EEO Investigative Services Office (NEEOISO) alleging that, as of April 27, 2015, the Agency again began violating the Settlement Agreement by refusing to allow him to use comfort breaks to administer his eye drops and instead required him to take an additional 30 minutes for lunch, for a total of a 60-minute lunch. (*Id*. at ¶ 10, Ex. 4 (PAGEID #398).) The form alleges disability and retaliation claims and seeks compensatory damages for the "unpaid 30 minutes" of lunch and his attorney's fees. (*Id*.) On July 2, 2015, Plaintiff's counsel sent a follow up letter alleging that the agency was in violation of the Settlement Agreement by making Plaintiff take a 60-minute lunch to administer his eye drops, and notifying the Agency that, pursuant to 29 C.F.R. 1614.504, it had thirty days to address the violation and comply with the Settlement Agreement. (*Id*., Ex. 5.)

**C.  The Agency denied it breached the Settlement Agreement and Plaintiff appealed**

In response to Plaintiff's Pre-Complaint Counseling Form (treated as a breach allegation under 29 C.F.R. § 1614.504), and his July 2, 2015 letter, which both alleged a breach of the

Settlement Agreement, the Agency's EEO office issued its decision on July 13, 2015, pursuant to 29 C.F.R. § 1614.504, finding that it had not breached the Settlement Agreement. (Second Am. Compl., Ex. 6 (PAGEID # 402-405).)

On August 5, 2015, Plaintiff appealed the Agency's decision to the EEOC Office of Federal Operations (OFO). (Third Mot. to Dismiss, Exs. B, C.) Plaintiff's brief alleges "this appeal is being filed because the Agency has breached the Settlement Agreement it entered into with the [Plaintiff]." (*Id.*, Ex. B at p. 1.) Before a decision was rendered and as of August 15, 2015, however, Plaintiff discontinued working with the Agency due to his failing eyesight, and voluntarily retired from USPS, effective March 31, 2016. (Second. Am. Compl., ¶¶ 54–56, 61 (PAGEID #382).)

### D. The EEOC OFO decided the Agency breached the Settlement Agreement

The EEOC OFO decided on December 9, 2015 that the Settlement Agreement allowed Plaintiff to use 50 minutes of break/lunch divided into one 30-minute lunch break, and two 10-minute comfort breaks. (Second Am. Compl., Ex. 7 (PAGEID #409-410).) The OFO noted that nothing in the Settlement Agreement states the Agency has the ability to unilaterally alter the amount of time the Plaintiff must take for his lunch break. (*Id.*) Finally, the OFO decided that requiring Plaintiff to take a 60-minute lunch break violated the Settlement Agreement. (*Id.*) The EEOC OFO ordered the Agency to continue to accommodate Plaintiff by allowing him to use his 50 minutes of lunch/break periods as needed throughout the work day to administer his eye drops. (*Id.*) The Order also provided that Plaintiff had a "Right to File a Civil Action" under 29 C.F.R. §§ 1614.407 and 1614.408. (*Id.* (PAGEID #410–11).)

### E. The Agency complied with the EEOC's OFO decision

On December 9, 2015, the Agency issued a "Final Agency Decision on Appellant's Breach" advising Plaintiff that, in accordance with the EEOC OFO decision, the Agency would

continue to accommodate Plaintiff by allowing him to use his 50 minutes of lunch/break periods as needed throughout the work day to administer his eye drops. (Second Am. Compl., Ex. 8 (PAGEID # 414–15).) The decision gave Plaintiff the right to appeal the Final Agency Decision to the OFO. (*Id*.) On March 11, 2016, however, Plaintiff initiated this lawsuit in federal court.

On March 31, 2016, Plaintiff was notified by the EEOC OFO that the Agency was in compliance with its decision and had provided OFO with sufficient documentation to demonstrate that the corrective action ordered by OFO was implemented. (Third Mot. to Dismiss, Ex.D (OFO's Notification to Plaintiff of the Agency's Compliance).)

## II.  <u>ARGUMENT</u>

Plaintiff brings this Second Amended Complaint[2] in an effort to correct the deficiencies that were present in his previous two complaints, but to no avail. First, Plaintiff's allegations of discrimination and retaliation should be dismissed pursuant to Rule 12(b)(6) because he failed to exhaust his administrative remedies before filing suit in this Court. Second, Plaintiff's intentional infliction of emotional distress ("IIED") claim should be dismissed because he does not allege facts sufficient to support that claim. Further, Plaintiff reasserts his IIED claim against an individual Defendant, Dawn Grilliott,[3] instead of pursuing it against the United States. As explained in the accompanying Motion to Substitute (Doc. No. 34), Ms. Grilliott is a federal

---

[2] N.B. Although Defendants' counsel did not object to Plaintiff's request to file a Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2), counsel did not agree that Ms. Grilliott was an indispensable party under Fed. R. Civ. P. 19.1.

[3] Notably, Plaintiff asserts Counts I–III against Defendants, without delineating which claims he is asserting against which Defendants. As a matter of law, Plaintiff can only assert his disability and retaliation claims against the head of the agency—here, the Postmaster General, see 42 U.S.C. § 2000e-16(c) and 29 U.S.C. § 794a(a)(1) (noting that the remedies, procedures, and rights set forth in 42 U.S.C. § 2000e-16(c) apply to claims under section 501 of the Rehabilitation Act.); and he can only assert his negligence claim against the United States under the FTCA, see 28 U.S.C. § 2679(b)(1).

employee who was acting within the scope of her employment when the allegations against her occurred. Therefore, under the Westfall Act, 28 U.S.C. § 2679(b)(1), Ms. Grilliott is entitled to immunity, and the United States should be substituted as a party for her in this lawsuit if the Court declines to dismiss the claim. This lawsuit should also be dismissed against Ms. Grilliot, pursuant to Fed. R. Civ. P. 12(b)(5), because she was never served, as evidenced by the absence of a Return of Service on the case docket. (*See* Doc. Nos. 27–32.) Finally, Plaintiff's negligence claim against the United States under the FTCA should be dismissed because the remedies afforded to him under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8116(c), preclude it.

## A. Plaintiff failed to exhaust his discrimination and retaliation claims

This Court should dismiss Counts I and II of Plaintiff's Second Amended Complaint because he never exhausted his discrimination and retaliation claims prior to filing suit in federal court. *Flowers v. Potter*, No. 3:05cv052, 2008 WL 687630, at *7 (S.D. Ohio, Mar. 11, 2008). Plaintiff terminated his underlying administrative proceedings and withdrew his EEO complaint in exchange for valuable consideration when he entered into the September 18, 2013 Settlement Agreement. (Second Am. Compl., Ex. 1 (PAGEID# 389-92).) Plaintiff, represented by counsel, unequivocally agreed to "forever give up and waive all claims and issues" asserted in the underlying complaint "in all forums." (*Id*. (PAGEID #392).) "A plaintiff who knowingly and voluntarily agrees to settle his claims is bound by his agreement." *Folley v. Henderson*, 175 F.Supp.2d 1007, 1011 (Rice, J.) (S.D. Ohio 2001). Further, "an employee may waive his cause of action under Title VII as part of a voluntary settlement. . . . [A]ny other rule would virtually eliminate the incentive for defendants to settle. *Id.* (citing *Jones v. PPG Indus., Inc*., 937 F.2d 608, 2001 WL 122364 (6th Cir. July 9, 1991) (unpublished)). Therefore, Plaintiff is not entitled to *de novo* review of his underlying Rehabilitation Act, and Title VII retaliation claims that were released and dismissed "**with** prejudice." *Id*.

Plaintiff's present lawsuit contains allegations that date back to summer of 2012 and predate the September 18, 2013 Settlement Agreement. (Second Am. Compl., ¶¶13-35.) To the extent Plaintiff's discrimination and retaliation claims are based on conduct that predates the parties' September 18, 2013 Settlement Agreement, those claims should be dismissed. *See Folley*, 175 F. Supp. 2d at 1012 (S.D. Ohio 2001) ("[I]nsofar as [plaintiff] seeks to litigate events that are the subject of the settlement agreement, the Postmaster General is entitled to summary judgment and/or the dismissal of [plaintiff's] Title VII claims."). Moreover, Plaintiff's claim that the Agency breached the settlement agreement does not revive his ability to litigate his settled Title VII and Rehabilitation claims—his proper course of action was to seek enforcement of the Settlement Agreement pursuant to 29 C.F.R. § 1614.504.; *Folley*, 175 F.Supp.2d. at 1101-12 & n.7. Plaintiff pursued this path and prevailed, and the Agency complied with the terms of the Settlement Agreement.[4] (*See* Second Am. Compl., Ex. 5; Third Mot. to Dismiss, Exs. B–D.)

Despite agreeing to be bound by the terms of the Settlement Agreement, Plaintiff alleges that his underlying discrimination and retaliation claims are nonetheless ripe for federal review because (1) the OFO failed to grant his request for the reinstatement of his underlying claims; (2) the Agency failed to process Plaintiff's May 22, 2015 Pre-Complaint Counseling Form as a separate complaint under 29 C.F.R. § 1614.106, as instructed by 29 C.F.R. § 1614.504(c); and

---

[4] To the extent Plaintiff is seeking monetary damages for a breach of settlement agreement, this Court is not the proper forum. Plaintiff may be entitled to seek that relief before the Federal Court of Claims under the Tucker Act, 28 U.S.C. § 1491. *See Pucciareiello v. United States*, 116 Fed. Cl. 390, 402-05 (2014); *see also Munoz v. Mabus*, 630 F.3d 856, 863-64 (9th Cir. 2010). The Court of Federal Claims has held that "Title VII's comprehensive scheme of review does not preclude Tucker Act jurisdiction in the Court of Federal Claims over Title VII settlement agreements . . . because they are not 'brought under' Title VII § 706(f)(3)." *Munoz*, 630 F.3d at 864 (*citing Taylor v. United States*, 73 Fed. Cl. 532, 541 (2006)). Instead, a breach of settlement agreement claim "is essentially a contract action against the federal government whose resolution requires no interpretation of Title VII itself . . . and belongs, if anywhere, in the Court of Federal Claims." *Id*.

(3) the OFO's decision informed Plaintiff that he had a right to initiate a civil action in federal court. (Second Am. Compl., ¶10 (PAGEID #376-77).)

### 1. The OFO was not required to grant Plaintiff's request for reinstatement

Plaintiff initially sought the Agency's compliance with the Settlement Agreement under 29 C.F.R. § 1614.504 in his July 2, 2015 notice to the agency's EEO Director,[5] not reinstatement of his underlying claims. (Second Am. Compl., Ex. 5.) 29 C.F.R. § 1614.504(a) states:

> If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased.

Because he never requested that the EEO Director reinstate his complaint, Plaintiff failed to comply with the plain text of the regulation and is not entitled to seek reinstatement now.

The regulation further provides that "if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination as to whether the agency has complied with the terms of the settlement agreement or decision." 29 C.F.R. § 1614.504(b). When issuing its determination, the Commission "**may** order such compliance with the decision or settlement agreement, or, alternatively, for a settlement, it **may**

---

[5] The EEO Director for the USPS is Eloise Lance, Manager, EEO Compliance and Appeals, the person to whom Plaintiff's July 2, 2015 letter is addressed. See the EEOC's list of "Federal EEO Agency Directors," *available at* https://www.eeoc.gov/federal/eeo_directors.cfm (last visited May 31, 2017). The term "EEO Director" referred to in 29 C.F.R. § 1614.504 "refers to the Director of the Office of Equal Opportunity, Director of Civil Rights, EEO Officer, or any other title used for the person that is responsible for carrying out the responsibilities set forth in 29 C.F.R. § 1614.102(c)." See § 1614.102(b)-(c); EEO Management Directive 110, Chp. 1, Section III, *available at* https://www.eeoc.gov/federal/directives/md-110_chapter_1.cfm#_Toc425745108 (last visited Apr. 2, 2017).

order that the complaint be reinstated for further processing from the point processing ceased." 29 C.F.R. § 1614.504(c) (emphasis added).

The regulation does not provide that the Commission ***must*** order a complainant's requested relief. *See Pezillo v. Evans*, EEOC Appeal No. 0120131736, 2013 WL 939618, at *2 (Aug. 30, 2013) ("[W]hile we note that complainant requested reinstatement of his complaint, in our discretion, we find that a more appropriate remedy in this case is to order agency compliance . . . ."); *Burns v. Evans*, EEOC Appeal No. 01A30172, 2003 WL 1872481, at *3 (Apr. 1, 2003) ("[C]omplainant asks for reinstatement of his underlying complaint. However, exercising our discretion in this matter, we find that specific enforcement is the more appropriate remedy in this case, especially since the agency fulfilled other terms of the settlement agreement, and in light of the agency's attempts to comply with the provisions at issue here"); see also *Irving v. Gates*, EEOC Appeal No. 0120061747, 2007 WL 3129607, at *2 (Oct. 18, 2007); *Shaffer v. Veneman*, EEOC Appeal No. 01A31536, 2004 WL 555074, at *1 (Mar. 12, 2004); *Tanner v. Potter*, EEOC Appeal No. 01A32173, 2003 WL 22532410, at *3 (Oct. 28, 2003); *Williams v. Principi*, EEOC Appeal No. 01A14453, 2002 WL 1999239, at *4 (Aug. 22, 2002); *Hillion v. Potter*, EEOC Appeal No. 01A20878, 2002 WL 374207, at *2 (Feb. 28, 2002), where the EEOC exercises its discretion to order specific enforcement or reinstatement regardless of the claimant's request.

As the above OFO decisions illustrate, the EEOC interprets 29 C.F.R. § 1614.504(c) as providing it with discretion to determine the more appropriate remedy—enforcement or reinstatement. *See Johnson v Cohen*, 6 Fed. Appx. 308, 311 (6th Cir. 2001) ("An agency's interpretation of its own regulations is of controlling weight unless it is plainly erroneous or

inconsistent with the regulation." (citation omitted)).[6]  Consequently, the OFO was not required to

grant Plaintiff's request for reinstatement that was asserted for the first time on appeal to the OFO.

Even if this Court were to find that the OFO decision is entitled to federal court review,

Plaintiff has only challenged the OFO's procedural compliance with its governing regulations and

has not disputed any substantive decision regarding his discrimination claim.  Accordingly, the

appropriate action is a mandamus action or challenge to agency action pursuant to Section 706(1)

of the Administrative Procedures Act, not a complete *de novo* review of his underlying

discrimination claims. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 -64 (2004)

(noting that § 706(1) claims are appropriate "where a plaintiff asserts that an agency failed to take

a *discrete* agency action that it is *required to take*"); *Buchanan v. Apfel*, 249 F.3d 485, 491 (6th

Cir. 2001) (holding that court has mandamus jurisdiction to consider whether Social Security

Commissioner complied with his own regulations); *see also Intermodal Techs. v. Mineta*, 413 F.

Supp. 2d 834, 839-40 (E.D. Mich. 2006) (comparing mandamus and APA jurisdiction and noting

that they are often co-extensive).  Here, Plaintiff does not allege that the OFO did not rule in his

favor, or that the agency did not comply with the OFO's order.  Rather, Plaintiff alleges that his

underlying discrimination claims are entitled to review because OFO did not grant his request for

reinstatement.  (Second Am. Compl., ¶ 10 (PAGEID #377).)  In this instance, the proper remedy

---

[6] Even though the plain text of 29 C.F.R. § 1614.504 clearly states that the OFO **may** order
compliance or reinstatement, and the EEOC's decisions interpreting §1614.504 explain that OFO
has discretion to order the more appropriate remedy, case law suggests that a claimant's path to
federal court review of discrimination claims underlying a Settlement Agreement could be based
on his/her choice of remedy.  *See e.g.*, *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (noting
that a claimant could "request what is essentially an unraveling of the settlement agreement so that
the complainant can pursue the underlying discrimination claims, which can be reviewed in federal
court."); *Munoz v. Mabus*, 630 F.3d 856, 862 (9th Cir. 2010) (noting that a claimant who requests
reinstatement "could eventually have been heard in federal court after exhausting administrative
procedures, even though § 1614.504 is silent to that possibility.")  Here, the Court does not need
to resolve the split of authority because, as set forth in this Motion, Plaintiff failed to comply with
the regulations by not first submitting his request for reinstatement to the EEO Director.

is to remand to the agency for further processing, if this Court determines that the OFO should have granted reinstatement, but failed to do so. *See Cissell Mfg. Co. v. U.S. Dep't of Labor*, 101 F.3d 1132, 1136 (6th Cir. 1996) ("It is well settled that when an agency makes an error of law in its administrative proceedings, a reviewing court should remand the case to the agency so that the agency may take further action consistent with the correct legal standards."); *Apfel*, 249 F.3d at 492. Remanding here will not only permit the agency to fully develop the administrative record but will also "give the agency a fair and full opportunity to adjudicate [the underlying] claims." *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

> **2. USPS correctly processed Plaintiff's claim under 29 C.F.R. § 1614.504, and Plaintiff waived any argument that USPS should have processed his breach allegation as a separate complaint under 29 C.F.R. § 1614.106**

Plaintiff alleges for the first time before the District Court that the agency was required to process the May 22, 2015 Pre-Complaint Counseling form, which was submitted by his counsel, as a separate complaint under 29 C.F.R. § 1614.106. Not so. As a threshold matter, Plaintiff waived this claim by failing to raise it before the Agency or the OFO. The claim likewise fails on the merits because the Agency properly processed the claim as a breach allegation in accordance with Plaintiff's own wishes.

> a. Plaintiff has waived any argument that the agency should have processed his breach allegations as a separate complaint

Plaintiff affirmatively sought to have his claim treated as a breach allegation under 29 C.F.R. § 1614.504 throughout the administrative process, and did not object to the agency's decision to process the claim in that manner. Plaintiff has thus waived any argument that the agency should have processed his breach allegations as separate complaint under 29 C.F.R. § 1614.106.

The administrative waiver doctrine, commonly known as issue exhaustion, generally precludes courts from considering arguments not raised before the administrative agency involved in the underlying proceeding. *Coalition for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 462 (6th Cir. 2004); *see also United States v. L.A. Trucker Truck Lines, Inc*., 344 U.S. 33, 37 (1952) ("Simple fairness . . . requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."). Issue exhaustion is most applicable to adversarial administrative proceedings, such as EEOC proceedings, where the parties are expected to develop the issues in a forum analogous to normal litigation. *Sims v. Apfel*, 530 U.S. 103, 109 (2000); *see also Leitner v. Potter*, 1:09-cv-274, 2010 WL 3890955, at *17 – *18 (W.D. Mich. Sept. 29, 2010) (applying issue exhaustion to claims not raised in EEOC proceeding).

Here, Plaintiff never put the agency on notice that he was asserting claims of subsequent discrimination to be processed under 29 C.F.R. § 1614.106. To the contrary, Plaintiff's counsel specifically invoked 29 C.F.R. § 1614.504, the regulations governing noncompliance claims, in his July 2, 2015 letter to the EEO Director in which he reiterated his claim the Agency had breached the settlement agreement.[7] Consequently, the Agency properly processed Plaintiff's request for specific compliance with the Settlement Agreement, as requested in his July 2, 2015 letter, and not as a new complaint or separate complaint under 29 C.F.R. § 1614.106. (Second

---

[7] The allegations contained in the July 2, 2015 letter mirror the allegations set forth in his May 22, 2015 Pre-Complaint Counseling Form. (*Compare* Second Am. Compl., Ex. 4 (PAGEID# 398) *with* Second Am. Compl., Ex. 5 (PAGEID# 401).) Indeed, Plaintiff concedes in his Second Amended Complaint, "the allegations of discrimination and retaliation in the May 22, 2015 Pre-Complaint *were the same allegations* that formed the basis of the settlement breach." (Second Am. Compl., ¶ 11.). Accordingly, it was reasonable for the agency to conclude, absent any evidence to the contrary, that Plaintiff was requesting his May 22 Pre-Counseling Complaint be processed under 29 C.F.R. 1614.504, not under 29 C.F.R. 1614.106. As noted infra, p. 12-13, this was also the correct legal determination given Plaintiff's allegations of noncompliance.

Am. Compl., Exs. 5, 6.)  Importantly, Plaintiff **never** appealed the Agency's July 13, 2015, decision to treat his May 22, 2015 Pre-Complaint Counseling form as a breach allegation to the EEOC's OFO. (Third Motion to Dismiss, Ex. C.)   If Plaintiff believed that the agency erred by not processing his allegations as subsequent acts of discrimination, it was incumbent upon him to raise that issue with OFO so that the alleged error could be corrected then.  *See L.A. Trucker*, 344 U.S. at 37. ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has the opportunity for correction in order to raise issues reviewable by the courts.").   Instead, his brief on appeal addressed only whether the agency breached the settlement agreement and implicitly, if not explicitly, endorsed the agency's decision to proceed under 29 C.F.R. § 1614.504. (Third Mot. to Dismiss, Ex. C.)  Plaintiff's complete failure to raise the issue before either the agency or the OFO denied the agency the opportunity to develop the record on this point and renders district court review of the new claims inappropriate.

b.  The agency correctly processed the allegations as a breach of settlement

If the Court elects to review the merits of this argument, the administrative record, construed in Plaintiff's favor, establishes that the agency did not err in treating Plaintiff's claim as a breach allegation.  The administrative record is devoid of any evidence that the agency prevented Plaintiff from pursuing a new claim and establishes, to the contrary, that the agency properly processed the claim as a breach allegation according to Plaintiff's own wishes.

The Sixth Circuit has previously held that plaintiffs cannot circumvent the administrative requirements of 29 C.F.R. § 1614.504 by repackaging noncompliance claims as retaliation claims. *Eneje v. Ashcroft*, 67 F. App'x 901, 905 - 06 (6th Cir. 2003) (per curiam). Where the alleged retaliation consists of failing to comply with a settlement order, the claim must be processed as a breach allegation and not as a separate retaliation claim. *Id.*   Here, Plaintiff's administrative

submissions alleged only a breach of the settlement agreement. For instance, the Pre-Complaint Counseling form identifies the relevant conduct as the USPS's breach and contains no allegations of subsequent discriminatory acts:

> The agency (USPS) began violating my settlement agreement in my previous case . . . by denying me comfort breaks and requiring me to take an additional 30 minutes of time for lunch (total 60 minute lunch). The change was made by supervisor Dawn Grilliot and violates my prior settlement.

(Second Am. Compl., Ex. 4 (PAGEID # 398).) This description is consistent with the April 28, 2015 and July 2, 2015 letters from Plaintiff's counsel to the USPS. (*Id.*, Ex. 2 (PAGEID # 396) ("I am writing to inform you that your Agency is violating the Settlement Agreement . . . ."); *id.*, Ex. 5 (PAGEID # 401) ("The Agency has breached the settlement agreement . . . . Pursuant to 29 CFR 1614.504, Mr. Centeno is notifying you … and allowing 30 days for the Agency to address this violation and comply with the settlement."). Thus, while Plaintiff listed retaliation under Part B on this Pre-Complaint Counseling Form, the agency properly based its decision on the nature of the described acts, not Plaintiffs' self-identification of the claim as retaliation. *Accord Eneje*, 67 F. App'x at 905-06 (affirming dismissal where Plaintiff "billed his claim as a 'new' retaliation claim in order to avoid compliance with the procedures set out for seeking enforcement of a prior order in 29 C.F.R. § 1614.504"); *see also Camper v. Potter*, No. CV-07-2251, 2009 WL 2714023 (D. Ariz. Aug. 27, 2009) ("Because this document does not make allegations that subsequent acts of discrimination violate a settlement agreement, Plaintiff was not entitled to proceed on a separate complaint." (citation omitted)).

Lastly, as noted *supra* p. 10-11, to the extent the Court determines the agency did err in not processing the allegations as a new complaint, the proper remedy for a challenge to agency action is to remand to the agency so that it can correct the error, process the claim, and develop

the administrative record. Once that process is exhausted, Plaintiff can seek federal review if he is dissatisfied with the outcome.

### 3. OFO boilerplate language does not provide a right to Federal review of unexhausted claims

Contrary to Plaintiff's claim, the OFO decision's "Right to File a Civil Action" language does not render Plaintiff's disability discrimination and retaliation claims ripe for federal review. The OFO decision states, in relevant part: "Alternatively, the Complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled 'Right to File a Civil Action.' 29 C.F.R. §§ 1614.407 and 1614.408." (Second Am. Compl., Ex. 7 (PAGEID #410).) The OFO's citation to 29 C.F.R. §1614.407, which is titled "Civil action: Title VII, Age Discrimination in Employment Act and Rehabilitation Act," is important because that regulation explains when Plaintiff can proceed with his Title VII and Rehabilitation Act claims in federal court.[8] It states, in relevant part:

> A complainant who has filed an individual complaint . . . is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court:
>
> (a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed;
>
> (b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken;
>
> (c) Within 90 days of receipt of the Commission's final decision on an appeal; or
>
> (d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

29 C.F.R. § 1614.407. Notably, Plaintiff withdrew his underlying complaint when he entered into the parties' Settlement Agreement. (Second Am. Compl., Ex. 1 (PAGEID # 392).) Therefore,

---

[8] 29 C.F.R. § 1614.08 provides the authority for a lawsuit in federal court under the Equal Pay Act, which is not applicable here.

Plaintiff's claim is not ripe for federal review because the underlying EEO complaint on which those claims are based no longer exists.

A number of federal courts have noted that the boilerplate "right to file a civil action" language nestled in an EEOC appeal decision does not confer subject matter jurisdiction or independently authorize any civil action in federal court. *See Wilson-Prater v. McHugh*, 2015 WL 4937877, at *6 (E.D. La., Aug. 18, 2015) ("The EEOC regulations that Plaintiff cites, such as 29 C.F.R. § 1614.407, do not independently authorize any civil action in federal court, they only set deadlines for those civil actions already permitted by statute."); *Kaplan v. James*, 25 F.Supp.3d 835, 841 (E.D. Va. 2014) (noting that "to the extent that Plaintiff relies on the statements in the EEOC letter regarding her appellate rights, boilerplate statements in an agency decision cannot waive sovereign immunity and confer jurisdiction to this Court."). Here, without the existence of an underlying EEO claim, the requirements of 29 C.F.R. § 1614.407 cannot be met.

## B. Plaintiff's Intentional Infliction of Emotional Distress claim is precluded by Title VII and is not sufficiently pled

In *Brown v. General Serv. Admin.*, 425 U.S. 820, 835 (1976), the U.S. Supreme Court held that Title VII provides "an exclusive judicial remedy for claims of discrimination in federal employment." In *Wallace v. Henderson*, 138 F.Supp.2d 980, 984-986 (Rice, J.) (S.D. Ohio 2000), this Court acknowledged the holding in *Brown*, but noted that the *Brown* decision does not "preclude plaintiffs from bringing claims which, although based on the same facts and circumstances as the Title VII claim, are based on a violation of a distinct and independent right." *Id*. at 986. Here, Plaintiff has not identified a "distinct and independent right" upon which he bases his IIED claim. (*Compare* Second Am. Compl., ¶¶ 41-48, 106-113 *with Wallace*, at 981.) Therefore, his IIED claim is precluded by Title VII and should be dismissed.

Even if Plaintiff properly alleged his IIED claim against the United States (or Defendant Grilliott), his claim would still fail because Plaintiff has not (and cannot) plead sufficient facts to state a plausible IIED claim against the Agency. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). As pled, Plaintiff's IIED claim contains an array of adjectives asserting nothing more than a formulaic recitation of the elements of an IIED claim that that Supreme Court warned against in *Twombly* and *Iqbal*. (*See* Second Am. Compl., ¶¶ 41-48, 106–113.)

To support an intentional infliction of emotional distress claim, plaintiff must show (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgt., Inc.*, 71 Ohio St. 3d 408, 410, 644 N.E.2d 286 (1994).[9] Here, Plaintiff does not allege that defendant acted in a way that was extreme and outrageous, nor does he allege that USPS's conduct was the proximate cause of his serous emotional distress.

---

[9] The law of the place where the act or omission occurred governs the United States' liability under the FTCA. *Harris v. United States*, 422 F.3d 322, 326-27 (6th Cir. 2005). Therefore, whether Plaintiffs' claims are viable against the United States depends primarily on Ohio law.

The Ohio Supreme Court adopted the standard set forth in comment d to Section 46 of the Restatement of the Law 2d, Torts (1965) to help define extreme and outrageous conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community . . . . .

*Reamsnyder v. Jaskolski*, 10 Ohio St. 3d 150, 153, 462 N.E.2d 392 (1984). Here, the gist of Plaintiff's lawsuit against USPS is that Plaintiff was denied certain "comfort breaks" that were agreed to between Plaintiff and USPS in the Settlement Agreement. (Second Am. Compl., ¶¶ 12, 25, 28, 53, Exs. 2, 3, 4, and 5, attached thereto.) Plaintiff, however, was still afforded an extended 60-minute lunch break, and two ten minute breaks throughout the duration of his workday, during which he could administer his eye drops. (Second Am. Compl., Ex. 6 (PAGEID # 404).) Although Plaintiff's Second Amended Complaint alleges that he was "not permitted to administer his eye drops for approximately fifteen weeks" (*see id*. at ¶ 54), there is no evidence in the administrative record that USPS denied Plaintiff the opportunity to administer his eye drops while he was at work. Rather, Plaintiff's allegations revolve around USPS's refusal to allow him to take certain "comfort breaks," and, instead, to extend his lunch break by 30-minutes. (*Compare* Second Am. Compl., at ¶¶ 53-62 *with id.*, Exs. 2, 3, 4, 5, and Third Mot. to Dismiss, Ex. C at 2-6.) These allegations do not describe conduct that is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Reamsnyder*, 10 Ohio St. 3d at 153.

Further, Plaintiff's allegations against USPS fail to explain how USPS's failure to afford Plaintiff "comfort breaks" proximately caused a loss of his eyesight. Proximate cause is defined as a "cause that directly produces an event and without which the event would not have occurred."

*Big Lots Stores, Inc. v. Am. Guarantee & Liab. Ins. Co.*, No. 2:14-CV-02635, 2017 WL 821671, at *4 (S.D. Ohio Mar. 2, 2017); *see also Pembaur v. City of Cincinnati*, 745 F.Supp. 446, 456 (1990) ("If the injury cited would have occurred without the tortious conduct complained of, proximate cause has not been established). Aside from conclusory allegations, Plaintiff's Second Amended Complaint makes no attempt to allege facts demonstrating that, but for USPS's denial of Plaintiff's comfort breaks, he would not have lost his eyesight. (*See* Second Am. Compl., ¶¶ 53–62, 106-113.) Plaintiff's IIED claim should be dismissed.

### C. Plaintiff's Negligence claim is precluded by the Federal Employees Compensation Act (FECA) and must be dismissed under Fed. R. Civ. P. 12(b)(1)

On or about January 23, 2017, Plaintiff submitted a Standard Form 95 to USPS alleging that "he loss [*sic*] sight in both eyes because his manager refused to allow him to administer his eye drops that were intended to preserve his sight" resulting in $365,000 in personal injury damages. (Second Am. Compl., Ex. 10 (PAGEID# 423-24).) In a letter dated March 23, 2017, USPS notified Plaintiff's counsel that because Mr. Centeno was acting within the course and scope of his employment when the claims against him occurred, his claims were not actionable under the FTCA because "[a]ny claim that he would have for damages stemming from his employment are specifically precluded by the FECA.". (*Id.*, Ex. 11 (PAGEID # 427); *see also id.* at ¶¶ 92-105.) Instead, " USPS further explained that "5 U.S.C. § 8116(c) provides that the benefits afforded by the FECA are exclusive, and thus a claim for injury arising out of federal employment may not be asserted on any other basis." (*Id.* (emphasis in original).)

Indeed, the FECA establishes a comprehensive and exclusive statutory scheme under which federal employees may seek coverage for work-related injuries. *Bush v. United States*, No. 1:13-cv-406, 2014 WL 661686, *3 (citing 5 U.S.C. § 8101, *et seq.*). Under the FECA, "the United States will pay compensation for the disability or death of an employee resulting from personal

injury sustained while in the performance of his duty . . . ." 5 U.S.C. § 8102(a); 20 C.F.R. § 10.1. A wide range of benefits is provided for work-related injuries covered by FECA, including payment of total or partial wage loss compensation, schedule awards for permanent loss or loss of use of specified members of the body, related medical costs and vocational rehabilitation.

Since the FECA establishes a comprehensive compensation scheme under which federal employees or their survivors receive benefits, regardless of fault, for employment-related injuries or deaths, Congress provided a remedy in the FECA that is exclusively administrative. 5 U.S.C. § 8116. Section 8116 of FECA provides in relevant part:

> the liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is <u>exclusive</u> and instead of all other liability of the United States or of the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

5 U.S.C. § 8116(c). The Secretary of Labor and his authorized agents have plenary authority to administer and decide questions arising under FECA. 5 U.S.C. § 8145. And Congress has specifically foreclosed judicial review of determinations under the FECA. See 5 U.S.C. § 8128(b). As the Supreme Court explained in *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983):

> [FECA] was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise—the "quid pro quo"—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

Because Plaintiff alleges that his injuries are the result of conduct that took place at work while he was performing his job duties, Plaintiff's negligence claim is precluded by the FECA and should

be dismissed.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Second
Amended Complaint be dismissed.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

*s/ Brandi M. Stewart*
BRANDI M. STEWART (0082546)
Assistant United States Attorney
200 West Second Street, Suite 600
Dayton, Ohio 45402
Office: (937) 225-2910 /Fax: (937) 225-2564
E-mail: Brandi.Stewart@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Motion to Dismiss was filed on May 31, 2017,
by use of the Court's ECF filing system and served by ECF to all parties of record, including the
following:

Julius L. Carter, Esq.
Julius L. Carter Co., LPA
130 W. Second Street Suite 1622
Dayton, OH 45402
(937) 222-7900
(937) 222-7910 Fax
jcarter@juliuscarter.com
Trial Attorney for Plaintiff

*s/Brandi M. Stewart*
BRANDI M. STEWART (0082546)
Assistant United States Attorney