# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| JOSE A. CENTENO, | : Case No. 3:16-cv-00087 |
| Plaintiff, | : District Judge Walter H. Rice |
| vs. | : Magistrate Judge Sharon L. Ovington |
| POST MASTER GENERAL MEGAN J. BRENNAN, *et al.*, | : |
| Defendants. | : |

# REPORT AND RECOMMENDATIONS[1]

This employment-discrimination case is before the Court upon Defendants' Motion To Substitute The United States As A Party For Individual Defendant Dawn Grilliott (Doc. #34), Plaintiff Jose A. Centeno's Response In Opposition And Affidavit (Doc. #s 39, 42), Defendants' Reply (Doc. # 44), and the record as a whole.

Centeno alleges in his Second Amended Complaint that during his employment as a letter carrier with the U.S. Postal Service, he suffered eye injuries and illnesses that affected his eyesight. His eye problems required treatment with medicated eye drops that he needed to administer three times during the work day. He requested an accommodation of his periodic need to administer the eye drops. The Postal Service initially accommodated his need.

Centeno further alleges that in 2012, a new acting Customer Service Manager

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

decided to stop his accommodation. Centeno filed an EEO Complaint and eventually, in September 2013, entered into a settlement agreement with the Postal Service.

In 2014, according to Centeno, Dawn Grilliott was temporarily assigned to the district office in the position of "labor relations specialist." (Doc. #27, *PageID* #381). She knew Centeno because she had once been his local supervisor. She consequently knew about his need for an accommodation of his eye condition.

Centeno alleges that in late 2014, Grilliott informed him that his accommodation would no longer be honored and his unpaid lunch period would be extended from thirty to sixty minutes. This altered schedule failed to accommodate his medical need to administer his prescription eye drops as instructed by his physician. "After not being permitted to administer his eye drops for approximately fifteen … weeks, Plaintiff lost the ability to read the letters he was responsible for preparing for delivery." *Id*. at 382. He was never able to work after August 2015. He eventually used up his annual leave and sick time, and he retired in March 2016. At some point, he lost his vision.

Count IV of Centeno's Second Amended Complaint claims that Grilliott intentionally inflicted emotional distress upon him. Count IV is the only Count that is presently pertinent.

Defendants seek to substitute the United States in place of Grilliott on Count IV. They reason that the Westfall Act, 28 U.S.C. § 2679, shields Grilliott from Centeno's claim because she acted within the scope of her employment when she was engaged in the conduct Centeno alleges. Centeno contends that the United States should not be

2

substituted in place of Grilliott because her alleged acts were not within the scope of her employment (for reasons to be explored).

"Pursuant to the Westfall Act, the United States stands in the shoes of its employees whose negligent or wrongful act[s] in the scope and course of their federal employment cause an injury. The Act effectively 'shields federal employees from liability for common law torts committed within the scope of employment." *Sullivan v. Shimp*, 324 F.3d 397, 399 (6th Cir. 2003) (quotation marks and internal citation omitted); *see* 28 U.S.C. §§ 1346(b), 2671-80. When a federal employee acts within the scope of her employment, the Westfall Act mandates substitution of the United States as the party defendant. *Woods v. McGuire*, 954 F.2d 388, 390 (6th Cir. 1992). "[T]he Westfall Act does not immunize federal employees for torts they commit outside the scope of their federal employment…." *Roberts v. United States*, 191 F. App'x 338, 341 (6th Cir. 2006).

The issue of whether a federal employee acted within the scope of her employment is one of law, not fact. *Sullivan*, 324 F.3d at 399. Yet, district courts must resolve the factual disputes "'necessary to its decision before entering its order.'" *Roberts*, 191 F. App'x at 342 (quoting *Singleton v. United States*, 277 F.3d 864, 870 (6th Cir. 2002) (overruled, in part, on other grounds, *Hawver v. United States*, 808 F.3d 693, 694 (6th Cir. 2015)) (additional citation omitted); *see Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008).

The Attorney General, through a United States Attorney, may certify that a federal employee was acting within the scope of her employment at the time of the incidents that

3

spawned the tort claim. *See* 28 U.S.C. § 2679(d)(2). The United States Attorney's certification is "*prima facie* evidence that the employee was acting within the scope of employment." *Dolan*, 514 F.3d at 593 (internal punctuation and citation omitted). Once the certification is presented, "[t]he burden is on the plaintiff to 'produce evidence that demonstrates that the employee was not acting within the scope of employment.'" *Id*. (citation omitted). "If plaintiff produces such evidence, the government must then produce evidentiary support for its certification." *Roberts*, 191 F. App'x at 342 (6th Cir. 2006) (citing *Singleton v*, 277 F.3d at 870).

The United States Attorney for the Southern District of Ohio has certified that Grilliott was acting within the scope of her employment at the time of the incidents alleged in Centeno's Second Amended Complaint. (Doc. #34, *PageID* #522).

In response, Centeno filed his own affidavit explaining that he worked as a letter carrier at the Dayton View Branch in Dayton, Ohio. According to his affidavit, Grilliott was, at some point, his direct supervisor. She was "very familiar with the accommodation [he] was provided." (Doc. #43, *PageID* #558). In November 2014, Grilliott "was working in labor relations and had no supervisory authority over [Centeno]." *Id*. at 559. Centeno's affidavit provides further details about Grilliott and the change in his work schedule and accommodation:

> 10. When … Grilliott came to Dayton View Branch in November of 2014, she informed me that my lunch break would be extended thirty (30) minutes.
>
> 11. When … Grilliott came to Dayton View Branch in November of 2014, she was not the supervisor or acting manager of the station.

4

> 12. When … Grilliott came to Dayton View Branch in November of 2014, I was not using thirty (30) minutes of overtime because of my accommodation.
>
> 13. In my nearly twenty (20) years with the postal service, I never saw anyone from labor relations come to a station and give orders to a letter carrier or change their hours.
>
> 14. When the Postal Service ended my accommodation by extending my lunch break, I was not able to utilize my medication as prescribed.
>
> 15. When the Postal Service ended my accommodation, I did not expect to lose my eyesight.

*Id.*

Ohio law controls whether Grilliott was acting within the scope of her employment because her alleged conduct occurred in Ohio. *See Sullivan*, 324 F.3d at 399. "Under Ohio law, an employee acts within the scope of his employment 'when the act can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the service to be rendered, or a natural, direct, and logical result of it.'" *Id.*; *see RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996); *Woods*, 954 F.2d at 390 (and cases cited therein). "An employer is not liable for independent self-serving acts of an employee which in no way facilitate or promote the employer's business, or for 'an intentional and wilful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person.'" *Woods*, 954 F.2d at 390 (citing *Byrd v. Faber,* 57 Ohio St.3d 56, 59 (1991)) (other citation omitted); *see Allstate Ins. Co. v. Quick*, 254 F.Supp.2d 706, 711 (S.D. Ohio 2002) (Rice, D.J.).

Centeno contends that Grilliott acted outside the scope of her employment because

5

"[h]er decision to fabricate the claim that [he] was using daily overtime was her personal decision and unrelated to her duties as a Station Manager, Delivery Supervisor, or Labor Relations Specialist." (Doc. #39, *PageID* #539). His affidavit, however, contains no information indicating that Grilliott made a personal decision unrelated to her position as labor relations specialist. This is seen in Centeno's Second Amended Complaint. He alleges there, "In November of 2014, Plaintiff was called into a meeting with his union, local management, and acting labor relations specialist Dawn Grilliott. At that November 2014 meeting, Dawn Grilliott informed Plaintiff that his agreed upon accommodation would no longer be honored and instead his unpaid lunch period would be extended from thirty (30) to sixty (60) minutes." (Doc. #27, *PageID* #381). This description of Grilliott's actions, along with the U.S. Attorney's certification, reveal activities that can be fairly and reasonably found to be an "ordinary and natural incident or attribute" of her job as a labor relations specialist. *Sullivan*, 324 F.3d at 399. In addition, the Government has submitted the U.S. Postal Service's standard job description for the position of labor relations specialist. Under this description, a labor relations specialist "[r]esolves complex districtwide labor relations and equal employment opportunity (EEO) problems affecting arbitration, grievances, contract administration, and labor relations practices and procedures." (Doc. #34, *PageID* #518). The listed job duties and responsibilities for someone holding this position includes providing "program oversight and technical advice and guidance to other employees regarding EEO policies, processes, procedures, and systems." *Id*.

6

The fact that Grilliott informed Centeno of the change to his work schedule concerned an EEO matter, namely, the Postal Service's accommodation of his eye problem and illnesses. Even if she acted wrongly or without a higher-level official's permission, the decision to change Centeno's work schedule and accommodation constituted an "ordinary and natural incident" of her labor-relations-specialist position and was a natural, direct, and logical result of it. *Sullivan*, 324 F.3d at 399. This is so even assuming that Grilliott fabricated the allegation that Centeno was improperly using overtime or his agreed-upon accommodation because she did so in her role as labor relations specialist, rather than committing her own "independent self-serving acts." *Woods*, 954 F.2d at 390 (citing *Byrd,* 57 Ohio St.3d at 59).

Centeno's assertion in his affidavit that Grilliott did not have supervisory authority over him when she told him that his lunch break would be extended to thirty minutes does not show she acted outside the scope of her job. While there is little doubt that a supervisor could alter a letter carrier's work schedule in this manner, this says nothing about what a labor relations specialist does, or does not do, in performing her job. Moreover, since changing Centeno's work schedule also changed the terms of his agreed-upon accommodation—an EEO matter—Grilliott was acting within the scope of her job. The same is true of the remaining statements in Centeno's affidavit, including his assertion that he "never saw anyone from labor relations come to a station and give orders to a letter carrier or change their hours." (Doc. #43, *PageID* #559). Assuming this was true, it does not show that Grilliott acted outside her job duties when she visited the

7

station, met with Centeno, a union representative, and local management to inform him of the change to his work schedule and accommodation. Such a meeting and Grilliott's actions during the meeting were in line with her EEO-related job duties and were "a natural, direct, and logical result of it.'" *Sullivan*, 324 F.3d at 399.

Additionally, accepting as true that Grilliott's decision was poorly thought out, incorrect, contrary to the terms of the September 2013 settlement agreement, or harmed Centeno's eyesight and contributed to his blindness does not show that she acted outside the scope of her job. "The scope of employment issue does not focus on the alleged wrongful nature of the employee's actions; rather, the issue is the actions complained of and whether those actions are 'so divergent that [their] very character severs the relationship of employer and employee.'" *RMI Titanium*, 78 F.3d at 1144 (citing *Osborne v. Lyles,* 63 Ohio St.3d 326, 330 (1992)); *see Quick*, 107 F.Supp.2d at 910 ("intentional and malicious conduct by an employee does not necessarily preclude the wrongful actions from coming within the scope of employment. Such actions *do* exceed the scope of an employee's employment, however, if the acts are self-serving and in *no way* facilitate or promote the employer's business." (internal citation omitted)). Thus, focusing not on the alleged wrongful nature of Grilliott's conduct but instead considering her actions, those actions were not so divergent from her EEO-related job duties that she effectively severed her employer/employee relationship with the Postal Service.

Centeno also submits that the facts support each element of his claim for intentional infliction of emotional distress, and if substitution occurs, "the agency will

8

have shielded [Grilliott] from her outrageous conduct and the government cannot be held responsible for that conduct." (Doc. #39, *PageID* # 540). Neither the wrongful nature nor the validity of Centeno's claim against Grilliott plays a role in determining whether she acted within the scope of her employment. *See RMI Titanium*, 78 F.3d at 1144. Further, it is "the purpose of the Westfall Act to shield governmental employees not only from liability but from suit…." *Osborn v. Haley*, 549 U.S. 225, 248 (2007). Because Grilliott acted within the scope of her employment and is consequently immune from liability and suit, the Westfall Act's purpose is satisfied.

Accordingly, as a matter of law, Grilliott's conduct was within the scope of her employment and, therefore, the Westfall Act bars Centeno's claim against her in Count IV of his Second Amended Complaint.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Defendants' Motion To Substitute The United States As A Party For Individual Defendant Dawn Grilliott (Doc. #34) be GRANTED; and

2. The United States be substituted as the party defendant on Count IV of Centeno's Second Amended Complaint.

December 29, 2017    *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).