**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| JOSE A. CENTENO, | : | Case No. 3:16-cv-00087 |
| --- | --- | --- |
| Plaintiff, | : : | District Judge Walter H. Rice |
| vs. | : : | Magistrate Judge Sharon L. Ovington |
| POSTMASTER GENERAL MEGAN J. BRENNAN, *et al.*, | : : : | |
| Defendants. | : : | |

# REPORT AND RECOMMENDATION[1]

## I.  Introduction

Plaintiff Jose A. Centeno is a former letter carrier for the United States Postal Service.  He asserts in his Second Amended Complaint that (1) Defendants failed to accommodate his eye disability in violation of the Rehabilitation Act of 1973; (2) Defendants retaliated against him in violation of Title VII of the Civil Rights Act of 1964; (3) his eye illness and injury and eventual loss of sight constitute personal injuries compensable under the Federal Tort Claims Act; and (4) Defendant Dawn Grilliott intentionally inflicted emotional distress upon him.[2]

The case is presently pending upon Defendants' Third Motion to Dismiss (Doc. #33), Centeno's Response in Opposition (Doc. #47), Defendants' Reply (Doc. #52), and the

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] The undersigned recently recommended that the United States be substituted in place of Grilliott.  That recommendation is presently pending.  As a result, plural references to Defendants is presently accurate.

record as a whole.

The factual background alleged in Centeno's original Complaint has been previously described. (Doc. #15). Centeno's Second Amended Complaint presents many of the same facts. Accordingly, the previous factual description, *id*., is incorporated herein by reference.

## II. Rule 12(b)(6) Standards

Defendants contend that dismissal of Centeno's discrimination and retaliation claims is warranted under Fed. R. Civ. P. 12(b)(6) due to his failure to exhaust his administrative remedies before filing the present case. (Doc. #33, *PageID* #455; *see Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003) (and cases cited therein)). In this context, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (C.A.6 (Ohio), 2016)

## III. Procedural Matters

Presently, the most significant information Centeno has added in his Second Amended Complaint tells the tale of his administrative activities, initially with the Postal Service, later with the Equal Employment Opportunity Commission. Centeno supports his Second Amended Complaints with documents from those administrative proceedings, including (in part) a copy of the September 2013 Settlement Agreement (the Settlement Agreement) between Centeno and the Postal Service; letters his attorney sent to the Postal Service—including a letter to the Postal Service's Equal Employment Opportunity (EEO) Manager; Centeno's EEO Pre-Complaint Counseling Form; the Postal Service's decision (in

2

July 2015), finding no violation of the Settlement Agreement, and the EEOC Office of Federal Operation's decision, finding the Postal Service violated the terms of the Settlement Agreement. (Doc. #27, Exhibits 1-7).

Defendants do not challenge Centeno's reliance on these documents. They have likewise attached documents from the administrative proceedings, namely, Centeno's EEOC charge, his notice of appeal, his supporting brief (and Exhibits attached to it), and the EEOC's notice to Centeno's counsel. (Doc. #33, Exhibits A-D). Although Centeno correctly points out that, in general, such extra-pleading documents cannot be considered when resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[3] But, he does not ask the Court to convert Defendants' Rule 12(b)(6) Motion to a motion for summary judgment under Fed. R. Civ. P. 56. This gives some pause. May the Court consider the extra-pleading documents without converting Defendants' Rule 12(b)(6) Motion to a motion for summary judgment?

The parties do not address this question, potentially leaving its answer murky and depriving the Court of the benefits gained by mutually zealous representation. Their reliance on extra-pleading documents is also somewhat mystifying when District Judge Rice previously explained, "[t]o the extent that Plaintiff alleges that Defendant's breach of the Settlement Agreement is so material that he should no longer be bound by the promises he made in that Agreement, this issue is more appropriately addressed in the context of a

---

[3] (Doc. #47, *PageID* #577 (citing *Weiner v. Klais & Co.*, 1089 F.3d 86, 88 (6th Cir. 1997) *overruled on other grounds, Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).

3

motion for summary judgment."[4] (Doc. #18, *PageID* #233). To be fair, Judge Rice's decision did not specifically preclude the parties' present choice to litigate their dispute under Rule 12(b)(6) rather than Rule 56.

Regardless, the parties' reliance on the documents related to the Agency's (Postal Service's) EEO proceedings and the subsequent EEOC proceedings contain facts consistent with or confirming the Second Amended Complaint's tale of administrative activities. Centeno, moreover, has not challenged either the authenticity of the extra-pleading documents or Defendants' reliance on them in support of their Motion to Dismiss. For these reasons, the Court may consider the EEO and EEOC documents attached to the Second Amended Complaint and Defendants' Motion to Dismiss without converting it to a Motion for Summary Judgment. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (proper to consider EEOC charge attached to Complaint); *see also Weiner*, 108 F.3d at 89 ("[A] defendant may introduce certain pertinent documents if the plaintiff fails to do so…. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied."); *Clark v. Donahoe*, 2012 WL 3224097, at *4 (S.D. Ohio Aug. 6, 2012) (the court may take judicial notice of administrative decisions as matters of public record).

## IV. Factual Background

Accepting as true the factual allegations in Centeno's Second Amended Complaint, and drawing all reasonable inference in Centeno's favor, *see Bickerstaff v*, 830 F.3d at 396,

---

[4] The reference to singular possessive "Defendant's" here was spot on because there was only one defendant identified in Plaintiff's original Complaint.

reveals the following.

A. <u>**Centeno's Agency (EEO) Proceedings**</u>

When Centeno first asked the Postal Service to accommodate his eye disability, they granted his request, thus allowing him to administer eye drops during his work breaks. This meant that Centeno was entitled to take a thirty-minute lunch plus two breaks (ten minutes each) to administer his eye medication. Later, a new Customer Service Manager ended Centeno's accommodation. Centeno responded by filing a complaint of disability discrimination with the Postal Service's Equal Employment Opportunity office. On September 18, 2013, Centeno and the Postal Service entered into a written settlement agreement (Settlement Agreement). Centeno "resumed working in the manner he had when he was previously accommodated." (Doc. #27, *PageID*# 381). All's well that ends well; or so it seemed.

Centeno alleges that a first breach of the Settlement Agreement occurred but the parties' informally resolved it. In late 2014, another breach of the Settlement Agreement occurred in when acting labor relations specialist Dawn Grilliott informed Centeno "that his agreed upon accommodation would no longer be honored and instead his lunch period would be extended from thirty … to sixty … minutes." *Id*. at 381. In response, Centeno took the following steps:

1. **April 28, 2014**: He sent a letter, through counsel, to the District Human Resources Manager, stating that the Postal Service was violating Settlement Agreement by charging him for a sixty-minute lunch. *Id*. at 376, 397.

5

2. **March 13, 2015**: He had not received a response to his letter, and he consequently used the Postal Service's EEO hotline to request counseling. *Id*. at 377.

3. **May 22, 2015**: Centeno, through counsel, filed a Pre-Complaint Counseling form alleging that the Postal Service breached the September 2013 settlement agreement by denying him comfort breaks and requiring him to take a sixty-minute lunch. *Id*. at 377, 398-400.

4. **July 2, 2015**: Centeno's counsel sent a letter to the EEO Compliance Manager informing her of the breach. *Id*. at 377, 401.

5. **July 13, 2015**: The Postal Service sent a letter to Centeno telling him that his requests for EEO counseling "will be processed as a breach allegation … and will not be processed as a new counseling request." *Id*. at 377, 402. This letter also informed him, among other things, that the Postal Service did not breach the September 2013 settlement agreement. *Id*. at 377, 404.

At this point, Centeno's administrative proceedings with the Postal Service concluded.

## B. Centeno's EEOC Proceedings

Centeno appealed the Postal Service's July 13, 2015 determination to the Equal Employment Opportunity Commission Office of Federal Operations (EEOC). Centeno alleges that he "requested reinstatement of his underlying claims, if a breach was found." *Id*. at 377. The EEOC's decision, in December 2015, described the relief Centeno sought:

> [Centeno] seeks to have the complaint reinstated from the point where it was terminated, and to be awarded compensatory and punitive damages, along with attorney fees.

*Id*. at 408. The EEOC concluded that the Postal Service had breached the Settlement Agreement by requiring Centeno "to take a 60 minute lunch break …." Id. at 409. The EEOC ordered the Postal Service "to continue to accommodate [Plaintiff] as it is currently

6

accommodating him (i.e., by allowing him to use 50 minutes of break/lunch periods as needed throughout the work day) ...." *Id*. at 410. This was subject to the limitations set forth in the Decision and the Settlement Agreement. *Compare id*. at 390 *with id*. at 401. The Decision also notified Centeno that he had the right to file a civil action in the U.S. District Court within ninety days. *Id*. at 411. And the decision stated, "This is a decision requiring the [Postal Service] to continue its administrative processing of [his] complaint." *Id*. Centeno alleges that by this time (December 2015), he had lost his eyesight and was no longer employed by the Postal Service.

True to its word, the EEOC continued to process Centeno's complaint. In January 2016, it issued its final decision, concluding that the Postal Service had complied with the EEOC's December 2015 decision and related mandates by providing Centeno with his requested accommodation (thirty-minute lunch and two breaks (ten minutes each) to use as at his discretion. *Id*. at 415.

## V.  Discussion

### A.  The Parties' Contentions and Exhaustion[5]

Defendants contend that Centeno's claims of disability discrimination and retaliation should be dismissed because he failed to exhaust his administrative remedies before filing the present case. They point out that his Second Amended Complaint asserts claims of discrimination and retaliation based on conduct that occurred before the Settlement

---

[5] Previous conclusions about Centeno's efforts to exhaust his administrative remedies were based on the allegations raised in his original Complaint. *See* Doc. #15. Those conclusions are no longer operative because Centeno has filed a Second Amended Complaint with additional details about his administrative activities, and because the parties direct their arguments at the additional details presently before the Court.

7

Agreement. Defendants reason that he failed to exhaust these claims because his "claim that the Agency breached the Settlement Agreement does not revive his ability to litigate his settled Title VII claims—his proper course of action was to seek enforcement of the Settlement Agreement pursuant to 29 C.F.R. § 1614.504." (Doc. #33, *PageID* #457, citing *Folley v. Henderson*, 175 F. Supp.2d 1007, 1011-12 (S.D. Ohio 2011) (Rice, D.J.)). Defendants also maintain that the July 2, 2015 letter from Centeno's attorney to the Postal Service's EEO Manager did not seek reinstatement of his discrimination complaint (*i.e.*, the discrimination claims underlying the Settlement Agreement); he instead "sought the Agency's compliance with the Settlement Agreement under 29 C.F.R. § 1604.504…." (Doc. #33, *PageID* #458). Defendants also argue that while 29 C.F.R. § 1604.504 permits the EEOC to order either compliance with the Settlement Agreement or reinstatement of the underlying discrimination claims, it does not mandate reinstatement of his underlying claims.

Centeno contends that he exhausted his discrimination and retaliation claims by asking the EEOC to reinstate his claims underlying the Settlement Agreement. He explains that once the EEOC determined the Postal Service had breached the Settlement Agreement, he properly exercised his right to file this case, raising both his underlying discrimination and retaliation claims (the claims arising before the Settlement Agreement) and his new discrimination and retaliation claims related to the breach (the Claims arising after the Settlement Agreement).

"Plaintiffs bringing claims under either Title VII or the Rehabilitation Act must

exhaust the administrative remedies available to them, prior to filing suit in a federal court." *Flowers v. Potter*, No. 3:05cv052, 2008 WL 687630, at *7 (S.D. Ohio, Mar. 11, 2008) (Rice, D.J.); *see Taylor v. Donahue*, 452 F. App'x 614, 617 (6th Cir. 2011) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 832-33 (1976)) (other citation omitted). "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.' " *Steiner v. Henderson*, 354 F.3d 432, 434-45 (6th Cir. 2003) (citation omitted).

> The requirement that the plaintiff exhaust remedies prior to instituting suit is intended to ensure that the Commission will have been afforded an opportunity to attempt conciliation and voluntary settlement, "the preferred means for resolving employment discrimination disputes." Courts have thus held that an employee who does not initially follow the administrative steps outlined in the Code and Regulations is precluded from bringing an action before a federal court. These rules also apply to retaliation claims that are based on conduct that occurred before the filing of the original charge.

*Flowers*, 2008 WL 697630, at *7 (citing, in part, *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005)) (other citations omitted).

Three things must occur for a federal employee to exhaust his disability discrimination and Title VII retaliation claims at the agency level. *Lee v. Potter*, 3:08cv344, 2010 WL 546366, at *4 (S.D. Ohio 2010) (Rice, D.J.). He must initially contact an EEO counselor for informal EEO counseling. *Id*. (citing 29 C.F.R. § 1614.105(a)(1)). He must then file and individual discrimination complaint with the agency. *Id*. (citing 29 C.F.R. § 1614.106(a)). Lastly, he must receive a final agency decision. *Id*. (citing 29 C.F.R. §

9

1614.110(a); *Lockett v. Potter,* No. 06-4373, 2008 WL 111023 F. App'x 784 (6th Cir. 2008) (outlining same process)). "The employee then has the option to file a discretionary appeal of the final agency decision to the Equal Employment Opportunity Commission…." *Lee*, 2010 WL 546366, at *4 (citing 29 C.F.R. §§ 1614.401, 1614.402(a)).

B.  **Centeno's Pre-Settlement Claims**

Centeno asserts in his Second Amended Complaint that he notified the Agency three times about Defendants' breach of the Settlement Agreement. The first occurred on April 28, 2015 by way of his attorney's letter. (Doc. #27, *PageID* #s 376-77 and Exh. 3). The second occurred when Centeno used the EEO's hotline and on May 22, 2015 when he submitted his pre-Complaint Counseling form. *Id*. at 377 and Exh. 4. The third occurred on July 2, 2015 when his attorney sent a letter to an EEO Manager. *Id*. at 377 and Exh. 5.

The issue is whether these administrative activities exhausted Centeno's disability discrimination claim and his Title VII retaliation claim. Resolving this issue begins with the fact that these three notices failed to specifically ask the Agency to reinstate his underlying, pre-Settlement Claims of discrimination or retaliation claims. Instead, Centeno and his attorney repeatedly alleged that Defendants had breached the Settlement Agreement and sought specific performance of the Settlement Agreement. *Id*. at Exhs. 3-5, *PageID* #s 397-401. This is seen most plainly in his attorney's letter on July 2, 2015, which focused on the alleged breach and asked the Agency to "comply with the settlement*." Id*. at 401.

His attorney, moreover, invoked 29 C.F.R. § 1615.504, and essentially asked for specific performance of the Settlement Agreement. *See* § 1615.504(c); *see also Taylor v.*

10

*Greithner*, 703 F.3d 328, 335 (6th Cir. 2013) ("Section 1615.504 allows a claimant … to seek … specific performance of the settlement agreement…."). He did not opt for the alternative remedy available under § 1615.504(c)—"what is essentially an unraveling of the settlement agreement so that [he] could pursue the underlying discrimination claims, which can be reviewed in federal court." *Taylor*, 703 F.3d at 335. Because Centeno did explicitly seek this alternative remedy and instead sought specific performance of the Settlement Agreement, he failed to exhaust his discrimination and retaliation claims, he did not avail himself of the alternative that would have permitted him to litigate his underlying, pre-Settlement-Agreement claims of discrimination and retaliation at the Agency level.

"This exhaustion requirement is not overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading."
*Blume v. Potter*, 289 F. App'x 99, 103 (6th Cir. 2008) (quoting, in part, *Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 732 (6th Cir. 2006) (other citation omitted)). "Consequently, "the EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.' " *Scott v. Eastman Chemical Co*., 275 F. App'x 466, 471 (6th Cir. 2008) (quoting *Randolph*, 453 F.3d at 732 and *Haithcock v. Frank,* 958 F.2d 671, 675 (6th Cir.1992)).

The closest Centeno came to alleging disability discrimination or retaliation was in the pre-Complaint Counseling form where he included the words "Disability—Vision" and "Retaliation—Prior EEO Activity/Settlement." *Id*. at 398. But, he focused his explanation

of these claims on the alleged breach of the Settlement Agreement without mentioning discrimination or retaliation. Centeno's discrimination and retaliation claims do not reasonably grow out of this Pre-Complaint Counseling form because it predated Centeno's counsel's two letters. Each of those letters focused and emphasized the alleged breach of the Settlement Agreement without seeking to unravel it so Centeno could litigate his discrimination and retaliation claims at the Agency level. And, neither of those letters alleged facts or raised claims that would reasonably give rise to, or alert the Postal Service to, Centeno's pre-Settlement Agreement discrimination and retaliation claims.

This does not matter, according to Centeno, because he raised his claims with the EEOC. Although accurate—he did raise his discrimination and retaliation claims with the EEOC—this does not correct or obviate his failure to ask the Postal Service to reinstate his claims. By choosing to seek specific performance rather than reinstatement of his underlying claims at the Agency level, he failed to give the Postal Service an opportunity to address the merits of his claim. He therefore failed to exhaust his pre-Settlement-Agreement claims of discrimination and retaliation.

Accordingly, Defendants' Motion to Dismiss is well taken as to Centeno's failure to exhaust his pre-Settlement Agreement claims.

## C. Centeno's Post-Settlement Claims

It is unnecessary to resolve whether Centeno properly exhausted his claims that Defendants discriminated and retaliated against him after the parties entered into the Settlement Agreement (on September 18, 2013). Exhaustion does not come into play here

because the Regulation applicable to these claims required the EEOC to open a new complaint concerning the discrimination that allegedly occurred after the Settlement Agreement. It states, in pertinent part: "Allegations that subsequent acts of discrimination violate a settlement agreement shall be processed as separate complaints under § 1614.06 or § 1614.204, as appropriate, rather than under this section." 29 C.F.R. § 1614.504(c). Given this mandate, the EEOC's failure to process as a new complaint Centeno's post-Settlement Agreement claim of discrimination constituted an error of law. *Hickey v. Chadick*, No. 2:08cv0824, 2010 WL 11484581, at *16 (S.D. Ohio 2010) (Graham, D.J.) ("Generally, a court will not uphold an agency action where the agency fails to follow its own regulations and where that error prejudices a claimant or deprives the claimant of a substantial right."). Although Defendants contend that Centeno waived this claim by not asking the EEO to process his post-Settlement-Agreement claims as a new complaint, the Regulation required the EEO to process a new complaint. There is no language in 29 C.F.R. § 1614.504 that required him to specifically seek this.

Centeno's post-Settlement Agreement retaliation claim presents a possible twist because "plaintiffs are not required to exhaust administrative procedures for 'retaliation claims based on conduct that occurs after the filing of the EEOC charge,' given that those claims 'can be reasonably expected to grow out of the charge.'" *Vacchiano v. Potter*, 2010 WL 11541828, at *3 (S.D. Ohio 2010) (Rice, D.J.) (quoting, in part, *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001)). This possible twist straightens out because the retaliation alleged in Centeno's Second Amended Complaint concerns Defendants' alleged

13

failure to accommodate his disability before date he filed his EEOC charge in October 2012. *See* Doc. #27, *PageID* #384; s*ee also* Doc. #33, Exh. A. (containing date he filed his EEOC Charge).  If, moreover, the Agency and the EEOC had properly processed Centeno's post-Settlement claim of discrimination as a new complaint, Centeno would have exhausted his post-Settlement claim of retaliation because it would have reasonably arisen from his discrimination charge.  And, because the administrative error in not processing Centeno's post-Settlement claim of discrimination requires remand, for reasons explained in the next paragraph, the remand for processing of a new complaint will include processing of his post-Settlement-Agreement claim of retaliation (that is, to the extent it involved retaliatory conduct that allegedly occurred before he filed his October 2012 EEOC charge).

Defendants are correct that the remedy for this error is an Order remanding the matter for Agency EEO processing and, if warranted, EEOC processing as a new complaint.  "It is well settled that when an agency makes an error of law in its administrative proceedings, a reviewing court should remand the case to the agency so that the agency may take further action consistent with the correct legal standards."  *Cissell Mfg. Co. v. U.S. Dept. of Labor*, 101 F.3d 1132, 1136 (6th Cir. 1996).  And, even assuming that Centeno did not exhaust this claim because he never presented it the EEOC, a remand will provide him with the opportunity to do so.

Accordingly, Defendants' Motion to Dismiss is well taken as to Centeno's post-Settlement Agreement claims of discrimination and retaliation.  Those claims should be dismissed without prejudice to renewal and the claims remanded to the Postal Service for

further proceedings under a new complaint, pursuant to 29 C.F.R. § 1614.504(c).

## VI. Federal Tort Claims Act

Centeno's Second Amended Complaint raises a personal-injury claim (essentially a negligence claim) against Defendants under the Federal Tort Claims Act (FTCA).

Defendants initially contend that the Federal Employees Compensation Act (FECA) precludes Centeno's FTCA claim because his alleged injuries are the result of conduct that took place while he was performing his job duties. This argument was not surprising at that time because "[w]hen FECA provides a remedy to an injured federal employee, that remedy is exclusive." *McDaniel v. United States*, No. 3:91cv154, 1991 WL 398674, at *1 (S.D. Ohio 1991) (Rice, D.J.) (citing, in part, 5 U.S.C. § 8116(c); and, in footnote 1, *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983)), *aff'd*, 970 F.2d 194 (6th Cir. 1992). What is somewhat surprising, or perhaps unanticipated by the parties, is that the Secretary of Labor denied Centeno's FECA claim.

Centeno states that he filed both a CA-1 and CA-2, and the Office of Workers Compensation determined that FECA did not cover his eye injuries. (Doc. #47, *PageID* # 584). Centeno argues, "Based on this lack of FECA coverage, [he] was permitted to pursue his FECA coverage, [he] was permitted to pursue his claim for negligence under the FTCA." *Id.* Although Centeno does not explain more about these events, he is doubtlessly referring to workers'-compensation claims (CA-1, CA-2) he submitted to, and were denied by, the Department of Labor's Office of Workers Compensation, Division of Federal Employees' Compensation.

15

Defendants acknowledge in their Reply that Centeno's "FECA claim was denied." (Doc. #52, *PageID* #597). They therefore turn to the merits of Centeno's FTCA claim because "[i]f the Secretary of [Labor] determines that the injury did not occur in the performance of duty, FECA does not cover the injury, and the employee may proceed in court." *Id*. (quoting, parenthetically, *McDaniel v. United States*, 970 F.2d 194, 198 (6th Cir. 1992)).

Defendants contend that Centeno cannot plead facts sufficient to state a plausible negligence claim. Yet, the first time Defendants raise this contention is in their Reply, an improper procedure: "It is well settled … that a party may not raise an issue for the first time in a reply brief." *Books A Million, Inc. v. H & N Enterprises, Inc*., 140 F.Supp.2d 846, 859 (S.D. Ohio 2001) (Rice, D.J.). More significantly, Defendants rest their non-plausibility assertion on evidence-based arguments more appropriate for consideration at the summary-judgment stage of the case. They contend:

> [T]here is absolutely no evidence in the administrative record that the USPS denied Plaintiff the opportunity to administer his eye drops while he was at work. To the contrary, and as the [EEOC] OFO found, USPS afforded [P]laintiff 'a 60-minute lunch breach and two 10 minute comfort breaks."... There was no finding that USPS denied Plaintiff the ability to take "comfort breaks." Therefore, the factual basis on which Plaintiff bases his negligence claim is demonstrably untrue.

(Doc. #52, *PageID* #598).

At the present stage of the case, the required plausibility analysis of Centeno's negligence claim focuses on the allegations of his Second Amended Complaint, not on the substantive facts found, or not addressed, by the EEOC at the administrative level. The

16

Court, moreover, is not bound by the absence of a finding by the EEOC "that USPS denied Plaintiff the ability to take "'comfort breaks.'" *Id*. Defendants cite no authority for the proposition that this Court is bound either by a finding that the EEOC made or by a conclusion they did not address or reach. And, although documents filed with, and coming from, the EEOC are considered matters of public record, *Caplinger v. Uranium Disposition Services*, LLC, 2:08cv548, 2009 WL 367407, at *2 (S.D. Ohio 2009) (Graham, D.J.), the EEOC's findings of fact are not binding in later judicial proceedings. *Cf. Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 828 (6th Cir. 2013) (and cases discussed therein) ("the Supreme Court has held that the doctrine of collateral estoppel does not apply to claims under Title VII."); *cf. also Benaugh v. Ohio Civil Rights Com'n*, No 1:04cv306, 2007 WL 1795305, n.1 (S.D. Ohio 2007) (stating parenthetically, "EEOC determinations and findings of fact, although not binding on the trier of fact, are admissible as evidence in civil proceedings as probative of a claim of employment discrimination…..") (citation omitted)).

In addition, Centeno alleges in his Second Amended Complaint that while his charge was pending with the EEOC, he "was denied the opportunity to use his comfort breaks as he had been using them and could not administer his eye drops as prescribed." (Doc. #27, *PageID* # 382). Accepting this as true—as in presently mandatory—Centeno has done all he needs, at this stage of the case, to plead that Defendants denied him comfort breaks, regardless of whether the administrative record contains, or does not contain, evidence supporting it.

17

Defendants also contend that Centeno's negligence claim is based on a formulaic recitation of the elements, falling short of showing a "but for" connection between Defendants' conduct and the loss of his eyesight. This contention lacks merit.

According to Centeno, the accommodation he sought and the Postal Service granted, allowed him two standard breaks (ten minutes each), a thirty-minute lunch break, and comfort breaks of undetermined duration. Comfort breaks were provided to all letter carriers for necessary activities, such as using the restroom. *Id*. at 380. Centeno alleges that Defendants did not permit him to take comfort breaks, for a lengthy time period—week upon week for fifteen weeks. This prevented him from administering his eye drops as his physician had prescribed. After this fifteen-week period, Centeno "lost the ability to read the letters he was responsible for preparing for delivery." (Doc. #27, *PageID* #382). Accepting these allegations as true, a reasonable inference of "but for" causation can be drawn between Defendants' act of denying Centeno comfort breaks (as he had previously taken them under the agreed-upon accommodation), with his inability to administer prescription medication as his physician directed, caused him to lose his ability to read letters and his vision. Centeno's Second Amended Complaint therefore asserts sufficient facts to plausibly show the "but for" element of his negligence claim. Accordingly, Centeno's FTCA claim is not subject to dismissal under Fed. R. Civ. P. 12(b)(1) or (6).

## VII. Intentional Infliction of Emotional Distress

Defendants argue that Title VII precludes Centeno's claim of intentional infliction of emotional distress (IIED) because he "has not identified a 'distinct and independent' right

18

upon which his bases his IIED claim." (Doc. #33, *PageID* # 33). This contention lacks merit because Centeno alleges that Defendants inflicted severe emotional distress upon him connected to a highly personal injury—loss of vision—that is not compensable under Title VII. *See Wallace v. Henderson*, 138 F.Supp.2d 980, 986 (S.D. Ohio 2000) (Rice, D.J.) (Declining to dismiss IIED claim because Title VII does not "preclude plaintiffs from bringing claims which, although based on the same facts and circumstances as the Title VII claim, are based on a violation of a distinct and independent right.").

Defendants also argue that Centeno has failed to raise a plausible IIED claim. Defendants, however, base this argument on the same flawed reasoning upon which they seek dismissal of Centeno's negligence claim. This argument therefore fails for the reasons stated above, *supra*, VI.

Accordingly, Centeno's IIED claim is not subject to dismissal under Rule 12(b)(6).

**IT IS THEREFORE RECOMMENDED THAT**:

Defendants' Third Motion to Dismiss (Doc. #33) be GRANTED in part and DENIED in part.

January 9, 2018                                    *s/Sharon L. Ovington*
                                                                     Sharon L. Ovington
                                                                     United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).