IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSE A. CENTENO,

    Plaintiff,

    v.

POSTMASTER GENERAL
MEGAN J. BRENNAN, *et al.*,

    Defendants.

:

:

:

:

Case No. 3:16-cv-87

JUDGE WALTER H. RICE

---

DECISION AND ENTRY ADOPTING UNITED STATES MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #53) ON
DEFENDANTS' MOTION TO SUBSTITUTE THE UNITED STATES AS A
PARTY FOR INDIVIDUAL DEFENDANT DAWN GRILLIOTT;
OVERRULING PLAINTIFF'S OBJECTIONS THERETO (DOC. #57);
SUSTAINING DEFENDANTS' MOTION TO SUBSTITUTE THE UNITED
STATES AS A PARTY FOR INDIVIDUAL DEFENDANT DAWN
GRILLIOTT (DOC. #34); DISMISSING ALL INDIVIDUAL-CAPACITY
CLAIMS AGAINST DEFENDANT DAWN GRILLIOTT WITH PREJUDICE;
DECISION AND ENTRY ADOPTING UNITED STATES MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #54) ON
DEFENDANTS' THIRD MOTION TO DISMISS; OVERRULING
PLAINTIFF'S OBJECTIONS THERETO (DOC. #58); SUSTAINING IN
PART AND OVERRULING IN PART DEFENDANTS' THIRD MOTION TO
DISMISS (DOC. #33); DISMISSING WITH PREJUDICE PRE-
SETTLEMENT CLAIMS OF DISCRIMINATION AND RETALIATION;
DISMISSING WITHOUT PREJUDICE POST-SETTLEMENT CLAIMS OF
DISCRIMINATION AND RETALIATION AND REMANDING THEM TO
THE UNITED STATES POSTAL SERVICE; ADMINISTRATIVELY
PROCESSING CASE PENDING EXHAUSTION OF ADMINISTRATIVE
REMEDIES

---

Plaintiff Jose Centeno filed suit against Megan J. Brennan, Postmaster

General of the United States, Dawn Grilliott, and the United States of America.

His Second Amended Complaint, Doc. #27, asserts claims of: (I) disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*; (II) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16; (III) personal injury under the Federal Tort Claims Act, 28 U.S.C. § 2671; and (IV) intentional infliction of emotional distress.

This matter is currently before the Court on two Reports and Recommendations filed by United States Magistrate Judge Sharon L. Ovington: (1) a December 29, 2017, Report and Recommendations, Doc. #53, recommending that the Court sustain Defendants' Motion to Substitute the United States as a Party for Individual Defendant Dawn Grilliott, Doc. #34; and (2) a January 9, 2018, Report and Recommendations, Doc. #54, recommending that the Court sustain in part and overrule in part Defendants' Third Motion to Dismiss, Doc. #33. Plaintiff has filed Objections to both Reports and Recommendations. Docs. ##57, 58. Defendants have filed Responses in Opposition to Plaintiff's Objections. Doc. ##59, 60.[1]


I.    **Factual and Procedural Background**

According to the Second Amended Complaint, Plaintiff previously worked as a letter carrier for the United States Postal Service ("USPS" or "the agency"). As a

---

[1]  Plaintiff has also submitted Replies in Support of Objections to Magistrate's Reports and Recommendations, Docs. ##61, 62. Although no such pleading is technically permitted by the Federal Rules of Civil Procedure, the Court will, in the interests of justice, consider Plaintiff's Replies. The Court notes that Defendants have not moved to strike those documents.

result of injuries and illness, he suffered from detached retinas and glaucoma in both eyes. These conditions required him to administer medicated eye drops up to three times per work day. Doc. #27, PageID#379. After each application of eye drops, he was required to keep his eyes closed for up to ten minutes. He sought an accommodation for his disability. In order to properly administer the eye drops throughout the day, he asked the agency to allow him to take paid comfort breaks in addition to his two regularly-scheduled 10-minute breaks and his unpaid 30-minute lunch break.[2] The agency initially granted Plaintiff's requested accommodation.

However, in the summer of 2012, the agency discontinued this accommodation. On October 5, 2012, Plaintiff filed an internal Equal Employment Opportunity ("EEO") complaint, alleging discrimination and retaliation. Doc. #33-1, PageID#472.[3] A Settlement Agreement, dated September 18, 2013, allowed him to once again take the comfort breaks necessary to properly administer his eye drops. Doc. #33-3, PageID##489-95. That Settlement Agreement provided, in part, as follows:

> Should a dispute arise regarding the implementation of this Agreement, it is agreed that the Complainant will not file a new

_____

[2] Comfort breaks, customarily used when a letter carrier needs to use the restroom, are not automatically calculated in the time a given route takes to deliver.

[3] Magistrate Judge Ovington found that because the documents attached to the Third Motion to Dismiss were consistent with Plaintiff's allegations as set forth in the Second Amended Complaint, they could be considered without converting the motion into one for summary judgment. Doc. #54, PageID#613.

administrative complaint or petition for enforcement until 15 days after the Complainant has notified the Agency that Complainant believes this Agreement has been breached, by providing the then Manager of Human Resources for the Postal Service Cincinnati District (or its successor) with a written statement which: (1) states that Complainant believes this Agreement has been breached; and (2) sets forth an explanation of how Complainant believes this Agreement has been breached. It is the intent of this paragraph to allow the Postal Service a reasonable time to, if possible, correct any real or perceived difficulties arising from the implementation of this Agreement.

*Id.* at PageID##494-95.

In the spring of 2014, the agency again denied Plaintiff the agreed-upon accommodation. After Plaintiff's counsel contacted the District Human Resources Manager about this breach of the Settlement Agreement, the agency agreed to continue honoring the agreed-upon accommodation.

Defendant Dawn Grilliott had been Plaintiff's local supervisor at the Dayton View Post Office. In that capacity, she was aware of Plaintiff's EEO complaint and the Settlement Agreement. Doc. #27, PageID#381. Plaintiff alleges that, in 2014, Grilliott was temporarily assigned to the district office as an Acting Labor Relations Specialist. In November of 2014, Grilliott informed him that the agreed-upon accommodation would no longer be honored, and that his unpaid lunch period would instead be extended from 30 minutes to 60 minutes. *Id.*

Given that this change in schedule would prevent Plaintiff from being able to administer his eye drops as prescribed, he considered this to be a breach of the Settlement Agreement and so informed the agency. He continued to take the previously-agreed-upon comfort breaks while awaiting a response. *Id.*

4

Early in 2015, Grilliott returned to the Dayton View Post Office as Plaintiff's Acting Station Manager and allegedly began harassing him about the accommodation. At the end of April of 2015, Plaintiff noticed that, as Grilliott had previously indicated, his unpaid lunch period was now being extended from 30 minutes to 60 minutes. *Id.* On April 28, 2015, Plaintiff's counsel sent a letter to the agency's Human Resources Manager concerning the breach of the Settlement Agreement. As required by the Settlement Agreement, he gave the agency 15 days to address the violation and comply with the settlement terms. Doc. #33-3, PageID#496. He received no response.

Accordingly, on May 13, 2015, Plaintiff requested EEO counseling on these new complaints of discrimination and retaliation by Dawn Grilliott. Doc. #27-3, PageID##398-99. On July 2, 2015, Plaintiff's attorney notified the agency's EEO Compliance Manager of the alleged breach of the Settlement Agreement and demanded specific performance within 30 days. Doc. #33-3, PageID#497. On July 13, 2015, the agency informed Plaintiff that his new complaints would be processed as a breach allegation, not as a new counseling request. *Id.* at PageID##498-501. The agency found his complaint to be untimely filed because, although he was notified of the schedule change in November of 2014, he did not notify the agency of the alleged breach until May 13, 2015. In addition, the agency denied that its actions constituted a breach of the Settlement Agreement; it denied that there was ever an agreement authorizing him to be paid for an additional 30 minutes per day. *Id.*

5

On August 5, 2015, Plaintiff appealed the agency's decision to the EEOC's Office of Federal Operations ("OFO"), asking for reinstatement of his underlying claims if a breach were found. Doc. #33-2, PageID#476; Doc. #33-3, PageID#487. He acknowledged that he was told of the schedule change in November of 2014, but noted that the change was not implemented until April 27, 2015, rendering timely his notification to the agency on May 13, 2015. He further argued that the Settlement Agreement specifically provided that he could use comfort breaks "as he is currently taking them," *i.e.*, up to three 10-minute comfort breaks per day in addition to his regularly scheduled breaks and lunch. He argued that any overtime hours were attributable not to the accommodation, but to the volume of mail on a given day. Doc. #33-3, PageID##485-87.

While the appeal to the OFO was pending, Plaintiff was denied the opportunity to take comfort breaks, and could not administer his eye drops as prescribed. Plaintiff alleges that, as a result, he lost his ability to read the mail and was unable to work after August 15, 2015. He took annual leave and sick leave for several months. Doc. #27, PageID#382.

In December of 2015, the OFO found that Plaintiff's complaint was, in fact, timely filed, and that the agency had breached the Settlement Agreement. Doc. #27-4, PageID##406-13. Although Plaintiff had requested reinstatement of his underlying claims, the OFO instead ordered specific performance of the Settlement Agreement, and ordered the agency to verify that it had cured the breach. The OFO also notified Plaintiff of his right to file a civil action within 90 days. *Id.* On

January 29, 2016, the agency issued its final decision, certifying its compliance with the OFO's December 2015 mandate. Plaintiff was told that, upon his return to work, he would again be accommodated as previously agreed. *Id.* at PageID##414-15.

By that time, however, the agency's compliance with the terms of the Settlement Agreement was of no use to Plaintiff. Given that he could no longer work, he no longer needed the accommodation. Plaintiff's loss of sight was permanent and he filed for retirement in January of 2016. Doc. #27, PageID#382. Plaintiff filed suit on March 11, 2016. His Second Amended Complaint asserts claims of disability discrimination and retaliation against Megan Brennan, Postmaster General (Counts I and II). It also asserts a personal injury claim under the Federal Tort Claims Act against the United States of America (Count III), and an intentional infliction of emotional distress claim against Dawn Grilliott (Count IV).

## II.    Defendants' Motion to Substitute the United States as a Party for Individual Defendant Dawn Grilliott (Doc. #34)

With respect to Count IV, the intentional infliction of emotional distress claim that was asserted against Dawn Grilliott, Defendants filed a Motion to Substitute the United States as a Party for Individual Defendant Dawn Grilliott. Doc. #34. Defendants argue that, because Count IV arises from decisions Grilliott made in her capacity as an employee of the USPS, and within the scope of her

employment, she is immune from personal liability under the Westfall Act, 28 U.S.C. § 2679(b)(1).

The Westfall Act provides that the exclusive remedy for a common law tort committed by a federal employee in the scope of his or her employment is an action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). *See* 28 U.S.C. § 2679(b)(1). *See Sullivan v. Shimp*, 324 F.3d 397, 399 (6th Cir. 2003) (noting that the Westfall Act "shields federal employees from liability for common law torts committed within the scope of their employment.") (quoting *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1147 (6th Cir. 1994)). Accordingly, Defendants ask that the United States be substituted as a party for Dawn Grilliott, and that Plaintiff's claim against her be dismissed.

After Defendants' motion was fully briefed, United States Magistrate Judge Sharon Ovington issued a Report and Recommendations, Doc. #53, recommending that the Court sustain the motion, and substitute the United States as the party defendant on Count IV of the Second Amended Complaint. Plaintiff has filed Objections, Doc. #57, to the Report and Recommendations. He contends that Magistrate Judge Ovington erred in finding that Grilliott was acting within the scope of her employment as a Labor Relations Supervisor when she discontinued his agreed-upon accommodation and extended his unpaid lunch hour in November of 2014.

8

Because Magistrate Judge Ovington's recommendations are dispositive of the individual capacity claims against Dawn Grilliott, the Court must review *de novo* those parts of the Report and Recommendations that have been properly objected to. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Having done so, the Court concludes that Magistrate Judge Ovington properly found that, because Dawn Grilliott was acting in the course and scope of her employment when the events giving rise to Plaintiff's claim took place, the Westfall Act precludes Plaintiff's claim against Grilliott in her individual capacity.

Attached to Defendants' motion is a Certification of Scope of Employment, signed by United States Attorney Benjamin Glassman, indicating that Grilliott was acting within the scope of her employment as an employee of the USPS at the time of the events in question. Doc. #34-2, PageID#522. The Westfall Act provides that:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).

Nevertheless, in *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995), the Supreme Court held that an Attorney General's certification that an employee was acting in the scope of his or her employment does not conclusively establish that substitution of the United States as a defendant is proper. The

certification merely provides *prima facie* evidence that the employee was acting within the scope of his or her employment. The plaintiff may challenge the certification by producing evidence showing that the employee was *not* acting in the scope of his or her employment. "If the plaintiff produces such evidence, the government must then produce evidentiary support for its certification." *Singleton v. United States*, 277 F.3d 864, 870-71 (6th Cir. 2002).

As Magistrate Judge Ovington explained, the question of whether an individual is acting in the scope of his or her employment is one of law, and is to be determined by the law of the state where the conduct occurred. *Sullivan*, 324 F.3d at 399; *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996). Nevertheless, in some cases, the court may need to resolve factual issues, and perhaps even hold an evidentiary hearing, prior to making that legal determination. *Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008).

Under Ohio law, an employee acts in the scope of his or her employment if the conduct at issue: "(1) is of the kind which she is employed to perform; (2) occurs substantially within the authorized limits of time and space; and (3) is actuated, at least in part, by a purpose to serve the employer." *Allstate Ins. Co. v. Quick*, 254 F. Supp. 2d 706, 711 (S.D. Ohio 2002). The Supreme Court of Ohio has held that an employee acts within the scope of his or her employment "when the act can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the service to be rendered, or a natural, direct, and logical result of it." *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St. 2d 271, 278, 344 N.E.2d

10

334, 339 (1976). An act is not considered to be outside the scope of employment unless it "is so divergent that its very character severs the relationship of employer and employee." *Osborne v. Lyles*, 63 Ohio St. 3d 326, 330, 587 N.E.2d 825, 829 (1992).

In response to the Attorney General's certification, Plaintiff submitted only his own affidavit. He states that when Dawn Grilliott came to Dayton View Branch in November of 2014, in her capacity as Acting Labor Relations Specialist, she had no supervisory authority over him. She nevertheless informed him that the previously-agreed-upon accommodation would no longer be honored and that his unpaid lunch break would be extended by 30 minutes. According to Plaintiff, in his nearly 20 years as a USPS employee, he has never seen a labor relations employee "come to a station and give orders to a letter carrier or change their hours." Doc. #43, PageID#559.

Magistrate Judge Ovington found that Plaintiff's affidavit was insufficient to demonstrate that Grilliott was acting outside the scope of her employment as an Acting Labor Relations Specialist, and that Grilliott's decision to change Plaintiff's work schedule was an "ordinary and natural incident" of Grilliott's position. The job description for a USPS Labor Relations Specialist provides, in relevant part, as follows:

**FUNCTIONAL PURPOSE:**

Resolves complex districtwide labor relations and equal employment opportunity (EEO) problems affecting arbitration,

grievances, contract administration, and labor relations practices and procedures.

**DUTIES AND RESPONSIBILITIES:**

　　1.　Analyzes complex labor relations problems associated with local implementation, negotiations, and contract administration; develops data and supporting materials for use in grievance and arbitration cases and local negotiations.

* * *

　　3. Represents the Postal Service in arbitration and EEO hearings, and Merit System Protection Board cases.

　　4. Provides advice, counsel, and assistance to local processing and distribution, customer services, and post office managers on labor relations issues and procedures affecting employees covered by labor agreements, including the negotiation of local memorandums of understanding, explaining provisions of labor agreements, and making settlements on grievances.

* * *

　　8. Provides program oversight and technical advice and guidance to other employees regarding EEO policies, processes, procedures, and systems.

Doc. #34-1, PageID#518.

Magistrate Judge Ovington found that, because Plaintiff's agreed-upon accommodation involved an EEO matter, Grilliott's actions fell within the scope of these job duties. The fact that Plaintiff had never personally observed a Labor Relations Specialist modify the hours of an individual employee does not change this result. Moreover, there was nothing to indicate that Grilliott's decision was based on her own "independent self-serving acts." Magistrate Judge Ovington concluded that, even assuming that Grilliott overstepped her job duties, the

12

challenged decision was not so divergent that its very character effectively severed the employer-employee relationship. Doc. #53, PageID#607.

Plaintiff's Objections to the Report and Recommendations are two-fold. First, he notes that, as a basis for her finding that Grilliott was acting in the scope of her employment, Magistrate Judge Ovington cited two job duties of a Labor Relations Specialist: (1) resolving "complex districtwide labor relations and equal employment opportunity (EEO) problems affecting arbitration, grievances, contract administration, and labor relations practices and procedures"; and (2) providing "program oversight and technical guidance and advice to other employees regarding EEO policies, processes, procedures, and systems." Plaintiff contends that neither is applicable given that his requested accommodation was not a "complex districtwide" problem; nor was it related to "program oversight and technical advice and guidance." Plaintiff maintains that his affidavit, stating that Grilliott had no direct supervisory authority over him, and that he had never seen a Labor Relations Specialist direct the daily activities of a letter carrier, is sufficient to warrant an evidentiary hearing on this issue.[4]

Second, Plaintiff notes that he was not involved in any ongoing EEO activity in November of 2014. His 2013 settlement agreement was in place and he did not file another EEO complaint until 2015. Accordingly, Plaintiff maintains that there was no reason for Grilliott to get involved in the issue of his work schedule. He

---

[4] Plaintiff further argues that, if an evidentiary hearing were held, the union steward, the union president and the station manager would testify that Grilliott's actions were outside the scope of her duties.

further argues that her decision to eliminate his additional breaks did not benefit the agency--even if she were trying to save the agency money, she could have allowed him to continue to take the additional breaks, but charge them to unpaid time.

Under the circumstances presented here, Plaintiff's affidavit is insufficient to warrant an evidentiary hearing or to require the presentation of additional evidence by Defendants. As the Sixth Circuit held in *RMI Titanium*, "[n]o hearing on certification is necessary where even if the plaintiff's assertions were true, the complaint allegations establish that the employee was acting within the scope of his/her employment." If a plaintiff "pleads conduct within an individual's scope of employment and merely alleges bad or personal motive, summary dismissal of the scope challenge is warranted." 78 F.3d at 1143.

Here, the Second Amended Complaint is completely devoid of any factual allegations, explicit or implied, that Grilliott was acting outside the scope of her employment as a Labor Relations Specialist when she told others that he was using his accommodation to work daily overtime, or when she eliminated the agreed-upon accommodation. Although he alleges that her treatment of him was discriminatory and retaliatory and caused him emotional distress, this is insufficient to avoid summary dismissal of his scope of employment challenge. *Id.*

EEO matters fell under the broad umbrella of Grilliott's job as a Labor Relations Specialist and, to the extent that the accommodation at issue was the subject of a Settlement Agreement concerning Plaintiff's previous EEO complaint,

any decision affecting that agreed-upon accommodation falls under that same broad umbrella. Even if Grilliott's conduct were arguably outside the scope of her defined duties, nothing in the Second Amended Complaint gives rise to an inference that Grilliott lacked authority to make the decision she did. Regardless of whether Grilliott had supervisory authority over him in November of 2014, regardless of whether Plaintiff had ever personally observed a Labor Relations Specialist engage in similar conduct, and regardless of whether he had a pending EEO matter on the date in question, it cannot be said that Grilliott's actions were so divergent from her job description that their very character severs the relationship between her and the USPS.

In addition, the Court notes that, although Grilliott told Plaintiff in November of 2014 that his accommodation would be eliminated and that his unpaid lunch break would instead be extended, Plaintiff concedes that no changes were actually implemented until April of 2015. *See* Doc. #27, PageID#381. By that time, Grilliott was employed as Plaintiff's Station Manager, whose duties expressly included reviewing and analyzing "productivity, staffing, and operations reports" and implementing "changes in procedures, equipment use, and schedules to increase productivity and promote efficiency." *See id.*; Doc. #34-1, PageID#520. Her decision to eliminate Plaintiff's extra breaks and instead extend his unpaid lunch hour appears to fall squarely within the scope of these job duties.

In short, Plaintiff has failed to produce evidence sufficient to support a finding that Grilliott was not acting within the scope of her employment as a USPS

15

employee during the events giving rise to Count IV of Plaintiff's Second Amended Complaint. Moreover, nothing in that pleading indicates that Grilliott was acting outside the scope of her employment.

For the reasons set forth above, Plaintiff's Objections to the Report and Recommendations, Doc. #57, are OVERRULED. Based on the reasoning and citations of authority set forth by Magistrate Judge Ovington in her Report and Recommendations, Doc. #53, as well as upon a thorough *de novo* review of this Court's file and the applicable law, the Court ADOPTS said judicial filing in its entirety, and SUSTAINS Defendants' Motion to Substitute the United States as a Party for Individual Defendant Dawn Grilliott, Doc. #34. The United States is SUBSTITUTED as the party defendant on Count IV of the Second Amended Complaint, and all individual-capacity claims against Dawn Grilliott are DISMISSED WITH PREJUDICE.


## III. Defendants' Third Motion to Dismiss (Doc. #33)

The Court turns next to Defendants' Third Motion to Dismiss, Doc. #33. Defendants argue that: (1) Plaintiff's claims of disability discrimination and retaliation must be dismissed because he failed to exhaust his administrative remedies prior to filing suit; (2) Plaintiff's FTCA claim is precluded by the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8116(c); and (3) Plaintiff's intentional infliction of emotional distress claim is precluded by Title VII and is not sufficiently pled.

Magistrate Judge Ovington issued a Report and Recommendations on January 9, 2018, recommending that Defendants' motion be sustained in part and overruled in part. Doc. #54.

## A.     Counts III and IV

Magistrate Judge Ovington recommended that the Court overrule Defendants' motion to dismiss the FTCA claim (Count III) and the claim of intentional infliction of emotional distress (Count IV). Neither party has objected to these recommendations. Based on the reasoning and citations of authority set forth by Magistrate Judge Ovington in her Report and Recommendations, Doc. #54, the Court ADOPTS this portion of said judicial filing and OVERRULES Defendants' motion to dismiss Counts III and IV.

## B.     Counts I and II

With respect to Plaintiff's claims of disability discrimination and retaliation (Counts I and II), Magistrate Judge Ovington divided the claims into those that arose prior to the September 18, 2013, Settlement Agreement, and those that arose after that date. She recommended that the Court dismiss with prejudice Plaintiff's pre-Settlement Agreement claims for failure to exhaust administrative remedies, and dismiss the post-Settlement Agreement claims without prejudice, remanding them to the USPS to be processed as new complaints.

Defendants have not filed any Objections to this portion of the Report and Recommendations. Plaintiff has, however. Doc. #58. Given the dispositive nature of the Report and Recommendations on Counts I and II, the Court must

review the matter *de novo*. Fed. R. Civ. P. 72(b). For the reasons set forth below, the Court ADOPTS Magistrate Judge Ovington's Report and Recommendations, Doc. #54, with respect to Counts I and II, and OVERRULES Plaintiff's Objections thereto, Doc. #58.

### 1.   Relevant Law

In *Steiner v. Henderson*, 354 F.3d 432 (6th Cir. 2003), the Sixth Circuit noted that the federal government's waiver of sovereign immunity under Title VII is conditioned on a "plaintiff's satisfaction of rigorous administrative exhaustion requirements." *Id.* at 434-35 (internal quotations omitted). The same is true for claims brought under the Rehabilitation Act. *Smith v. United States Postal Serv.*, 742 F.2d 257, 262 (6th Cir. 1984). At issue here is whether Plaintiff fully exhausted his administrative remedies prior to filing suit.

As previously discussed, Plaintiff filed an EEO complaint in October of 2012. He alleged discrimination on the basis of race, national origin, and disability, and retaliation for prior EEO activity. Doc. #33-1, PageID#472. He entered into a Settlement Agreement with the USPS on September 18, 2013, whereby the agency agreed to continue to accommodate his disability by allowing him to use additional comfort breaks to administer his eye drops. In return, Plaintiff dismissed his complaint with prejudice and waived the right to pursue "all claims and issues" asserted in his EEO complaint. Doc. #27-1, PageID##389-95. Notably, execution of the Settlement Agreement halted the administrative processing of Plaintiff's complaint.

To the extent that Plaintiff argues that the USPS breached the Settlement Agreement in April of 2015, he was required to follow the procedures set forth in 29 C.F.R. § 1614.504. That regulation provides as follows:

(a) Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties. Final action that has not been the subject of an appeal or civil action shall be binding on the agency. If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. *The complainant may request that the terms of [the] settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased.*

(b) The agency shall resolve the matter and respond to the complainant, in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination as to whether the agency has complied with the terms of the settlement agreement or decision. The complainant may file such an appeal 35 days after he or she has served the agency with the allegations of noncompliance, but must file an appeal within 30 days of his or her receipt of an agency's determination. The complainant must serve a copy of the appeal on the agency and the agency may submit a response to the Commission within 30 days of receiving notice of the appeal.

(c) Prior to rendering its determination, the Commission may request that parties submit whatever additional information or documentation it deems necessary or may direct that an investigation or hearing on the matter be conducted. If the Commission determines that the agency is not in compliance with a decision or settlement agreement, and the noncompliance is not attributable to acts or conduct of the complainant, it may order such compliance with the decision or settlement agreement, or, alternatively, for a settlement agreement, it may order that the complaint be reinstated for further processing from the point processing ceased. *Allegations that subsequent acts of discrimination violate a settlement agreement shall be processed as*

*separate complaints under § 1614.106 or § 1614.204, as appropriate, rather than under this section.*

29 C.F.R. § 1614.504 (emphasis added).

As the Sixth Circuit has explained, § 1614.504(a) sets forth the "exclusive procedures by which a complainant may seek relief" for breach of a settlement agreement. *Taylor v. Geithner*, 703 F.3d 328, 335 (6th Cir. 2013). A complainant may either: (1) "seek injunctive relief, *i.e.*, specific performance of the settlement agreement, within the agency structure"; or (2) request reinstatement of the underlying claims—"what is essentially an unraveling of the settlement agreement so that the complainant can pursue the underlying discrimination claims." *Id.* Only if the complainant requests reinstatement and exhausts his administrative remedies can the claims be reviewed in federal court. *Id. See also Munoz v. Mabus*, 630 F.3d 856, 862 (9th Cir. 2010) ("Had Munoz chosen to reinstate his underlying discrimination complaint instead of seeking specific performance, his claim could eventually have been heard in federal court after exhausting administrative procedures.").

## 2.    Relevant Procedural History

Here, Plaintiff sought injunctive relief from the USPS in the form of specific performance of the Settlement Agreement. On April 28, 2015, his attorney wrote a letter to Deborah O'Neal, Cincinnati District Human Resources Manager for the USPS, alleging that the agency was violating the Settlement Agreement by charging Plaintiff with a 60-minute unpaid lunch period each day in lieu of allowing

20

him to take extra comfort breaks. He gave the agency 15 days to address the violation "and comply with the settlement terms." Doc. #27-3, PageID#397.

On May 21, 2015, having received no response from the agency, Plaintiff filed Information for Pre-Complaint Counseling, asserting disability discrimination and retaliation by his supervisor, Dawn Grilliott. *Id.* at PageID##398-400. Thereafter, on July 2, 2015, Plaintiff's counsel notified Eloise Lance, Manager, EEO Compliance and Appeals for the USPS, of the breach, and of the agency's failure to respond. He allowed 30 days for the agency "to address this violation and comply with the settlement." *Id.* at PageID#401.

On July 13, 2015, the USPS issued its decision. It treated Plaintiff's May 21, 2015, request for counseling as a breach allegation instead of a new counseling request. The agency concluded that Plaintiff's breach allegation was untimely filed and, even if it were timely filed, no breach occurred because he was never authorized to "use overtime on a daily basis or to extend [his] workday by an extra 30 minutes." The agency notified him of his right to appeal to the Equal Employment Opportunity Commission's Office of Federal Operations ("OFO"). *Id.* at PageID##402-05.

On appeal to the OFO, Plaintiff asked for the first time "to have his complaint reinstated from the point where it was terminated." Doc. #33-3, PageID#487. Although the OFO found that Plaintiff's complaint was timely filed, and that the agency had breached the Settlement Agreement, it did not order reinstatement of the claims. Instead, on December 9, 2015, it reversed the

21

agency's findings and remanded the case, ordering the agency to cure the breach by specifically complying with the terms of the Settlement Agreement. Doc. #27-4, PageID##406-13. On December 29, 2015, the USPS certified that, upon Plaintiff's return to work from medical leave, the agency would comply with the terms of the Settlement Agreement. *Id.* at PageID##414-16.

Upon receiving the final decision from the OFO, Plaintiff filed suit, alleging disability discrimination and retaliation. Defendants maintain that Plaintiff's claims must be dismissed because he failed to exhaust his administrative remedies prior to filing suit.

### 3.    Discussion

As previously noted, Magistrate Judge Ovington divided the claims of discrimination and retaliation into two groups: (1) those that arose prior to the September 18, 2013, Settlement Agreement; and (2) those that arose after the September 18, 2013, Settlement Agreement.

#### a.    Pre-Settlement Agreement Claims

The Court turns first to the claims that arose prior to the September 18, 2013, Settlement Agreement. Administrative processing of the underlying claims of discrimination and retaliation was halted when the Settlement Agreement was executed. Plaintiff expressly waived his right to further pursue those claims. *See* Doc. #27-1, PageID#392.

### i) Report and Recommendations (Doc. #54)

In her Report and Recommendations, Magistrate Judge Ovington noted that, under 29 C.F.R. § 1614.504(a), Plaintiff had two choices after the alleged breach occurred. He could either request specific performance or he could request reinstatement of his claims for further processing from the point processing had ceased. Although Plaintiff repeatedly asked the agency to specifically comply with the terms of the Settlement Agreement, he never asked the agency to reinstate his claims. Accordingly, the agency never had an opportunity to address the merits of those claims.

The fact that Plaintiff later asked the EEOC's OFO to reinstate his underlying claims did not cure this defect. Pursuant to 29 C.F.R. § 1614.504(a) and *Taylor*, 703 F.3d at 335, Plaintiff was required to seek reinstatement at the *agency* level if he later wanted to pursue these claims in court. Because Plaintiff failed to exhaust his pre-Settlement Agreement claims at the agency level, Magistrate Judge Ovington recommended that they be dismissed with prejudice. Doc. #54, PageID##619-21.

### ii) Plaintiff's Objections (Doc. #58)

Plaintiff objects to this recommendation. Doc. #58. He first notes that the Settlement Agreement required him to give the agency notice and an opportunity to cure. Doc. #27-1, PageID#394. He did this. With respect to relief requested from the *agency*, Plaintiff impliedly concedes that he sought specific performance rather than reinstatement of his underlying charges of discrimination and

retaliation. He did, however, ask the EEOC's OFO to reinstate the claims underlying the Settlement Agreement. He maintains that nothing in the regulation requires him to seek reinstatement by the agency prior to seeking reinstatement by the EEOC. This argument lacks merit.

Magistrate Judge Ovington correctly concluded that Plaintiff was required to request reinstatement *by the agency* so that he could fully exhaust his administrative remedies prior to seeking judicial review of the underlying claims. *See* 29 C.F.R. § 1614.504(a); *Taylor*, 703 F.3d at 335. A subsequent request to the EEOC, on appeal, for reinstatement of the underlying claims does not cure this defect. Plaintiff notes that 29 C.F.R. § 1614.504(c) provides that, if the EEOC finds a breach, it may order either specific performance or reinstatement. This, however, does not absolve him of his duty to request reinstatement at the agency level.

Plaintiff also argues that because the agency materially breached the terms of the Settlement Agreement, he should be permitted to rescind it and move forward with judicial review of the underlying claims. The law is clear, however, that § 1614.504(a) sets forth the exclusive remedies for a claimed breach of a settlement agreement. A complainant must either request specific performance by the agency, or request that the agency reinstate the original underlying claims for continued processing. Until those underlying claims have been administratively exhausted in accordance with the procedures set forth in § 1614.504, the Court lacks subject matter jurisdiction to consider them. *Taylor*, 703 F.3d at 335.

Finally, Plaintiff argues that, even if he did not administratively exhaust his pre-Settlement claims, the Court should remand them to the USPS instead of dismissing them. Citing *Valentine-Johnson v. Roche*, 386 F.3d 800 (6th Cir. 2004), he argues that the Court has equitable discretion to allow these claims to move forward.

*Valentine-Johnson* is distinguishable, factually and legally. It did not involve any alleged breach of a settlement agreement subject to the requirements of 29 C.F.R. § 1614.504. Rather, it involved 29 C.F.R. § 1614.302, which governs "mixed" case complaints before the Merit Systems Protection Board ("MSPB"). The Sixth Circuit held that, although the plaintiff had not exhausted her administrative remedies with the MSPB with respect to her termination claim, the unique circumstances rendered dismissal of that claim "inequitable and unjust." 386 F.3d at 813. The plaintiff, who was proceeding *pro se*, had relied to her detriment on erroneous advice from the administrative judge about the scope of claims she could pursue before the MSPB. In addition, the court found that the defendant was judicially estopped from changing its position on the exhaustion issue, having previously agreed with the administrative judge that plaintiff could pursue her termination claim in the district court. Under these unique circumstances, the court found that the plaintiff's termination claim should be remanded to the district court rather than dismissed. *Id.* The court noted, however, that under normal circumstances, a plaintiff is not "free to ignore"

established statutory procedures governing exhaustion of administrative remedies. *Id.*

Plaintiff maintains that, as in *Valentine-Johnson*, equity requires that he be permitted to pursue his pre-Settlement Agreement claims in federal court, despite his failure to exhaust his administrative remedies. In support of this argument, he notes that, because the USPS found no breach, it would not have ordered reinstatement even if he had requested it. Moreover, despite his request for reinstatement on appeal to the EEOC, the EEOC ordered specific performance instead. This remedy was largely useless because, by that time, he had been on medical leave for months and no longer needed the accommodation at issue. The USPS did not notify the EEOC of this fact; instead, it certified its compliance with the EEOC's order, stating that it would again provide the accommodation when Plaintiff returned to work.

Although the Court sympathizes with Plaintiff's situation, the fact remains that he did not seek reinstatement, at the agency level, of the pre-Settlement Agreement claims of discrimination and retaliation, as required for judicial review. *See* 29 C.F.R. § 1614.504(a). As was the case in *Taylor*, Plaintiff's equitable arguments are insufficient to "overcome the obstacle of sovereign immunity." *Taylor*, 703 F.3d at 335.[5]

---

[5]   Plaintiff notes that, because the USPS took no final action within 180 days after he filed his original EEO complaint in October of 2012, he could have filed suit instead of proceeding with the administrative process. *See* 29 C.F.R. § 1614.407 (b). That may be true. Nevertheless, because he chose to settle his claims with

Moreover, unlike the plaintiff in *Valentine-Johnson*, Mr. Centeno was represented by counsel throughout the administrative proceedings. He does not allege that he relied to his detriment on erroneous advice given by a judicial officer, or that Defendants are judicially estopped from asserting the defense of failure to exhaust administrative remedies.

Having made the choice to ask the agency to comply with the terms of the Settlement Agreement instead of asking for reinstatement of the underlying claims, Plaintiff cannot now pursue those claims in court. Because Plaintiff failed to exhaust his administrative remedies, this Court lacks subject matter jurisdiction over those claims. Accordingly, the Court OVERRULES Plaintiff's Objections, Doc. #58, to this portion of the Report and Recommendations.

Based on the reasoning and citations of authority set forth in the Report and Recommendations, Doc. #54, as well as upon a thorough *de novo* review of this Court's file and the applicable law, the Court ADOPTS this portion of said judicial filing, SUSTAINS this portion of Defendants' Third Motion to Dismiss, Doc. #33, and DISMISSES WITH PREJUDICE all claims that arose prior to the September 18, 2013, Settlement Agreement.

---

the USPS in September of 2013, he is subject to the exhaustion requirements set forth in § 1614.504. *See Hernandez v. Donovan*, 710 F. Supp. 2d 1153, 1157 (D.N.M. 2010) (noting the distinction between the "right to sue" and the exhaustion of administrative remedies necessary for purposes of federal jurisdiction); *Kaplan v. James*, 25 F. Supp. 3d 835, 841 (E.D. Va. 2014) (noting that boilerplate statements in an agency decision concerning appeal rights "cannot waive sovereign immunity and confer jurisdiction to this Court.").

b.    **Post-Settlement Claims**

The Court turns now to Plaintiff's claims of discrimination and retaliation that arose *after* the September 18, 2013, Settlement Agreement.

### i)  Report and Recommendations (Doc. #54)

With respect to these post-Settlement Agreement claims, Magistrate Judge Ovington found that it was unnecessary to resolve the question of exhaustion of administrative remedies.  EEOC regulations governing breaches of settlement agreements provide that "[a]llegations that subsequent acts of discrimination violate a settlement agreement *shall be processed as separate complaints* under § 1614.06 or § 1614.204, as appropriate, rather than under this section."  29 C.F.R. § 1614.504(c) (emphasis added).  The USPS failed to follow this regulation, instead treating Plaintiff's allegations of new acts of discrimination and retaliation as a breach of the Settlement Agreement.  *See* Doc. #27-3, PageID#402.

Quoting *Cissell Manufacturing Co. v. U.S. Department of Labor*, 101 F.3d 1132, 1136 (6th Cir. 1996), Magistrate Judge Ovington found that, because the agency had made an error of law, the case must be remanded to the USPS "so that the agency may take further action consistent with the correct legal standards."  She therefore recommended that any claims of discrimination and retaliation that arose after September 18, 2013, be dismissed without prejudice, and that the matter be remanded to the USPS so that those claims can be processed as new complaints.  She noted that, "even assuming that Centeno did

not exhaust this claim because he never presented it [to] the EEOC, a remand will provide him with the opportunity to do so." Doc. #54, PageID#623.

### ii) Objections (Doc. #58)

Plaintiff agrees that, under 29 C.F.R. § 1614.504(c), the USPS was required to process his new allegations of discrimination and retaliation by Dawn Grilliott as separate complaints, and failed to do so. He objects, however, to the recommended remedy of remand.

Plaintiff points out that the regulations authorize him to file a civil action in district court:

> (a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed;
>
> (b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken;
>
> (c) Within 90 days of receipt of the Commission's final decision on an appeal; or
>
> (d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

29 C.F.R. § 1614.407.

Plaintiff notes that more than 180 days have passed since he filed his new complaints of discrimination and retaliation in May of 2015. Accordingly, had his complaint been processed as a new claim, as required by 29 C.F.R. § 1614.504(c), he would have been eligible by now to file suit instead of proceeding with the administrative process at the agency level. *See* 29 C.F.R.

§ 1614.407(b). Likewise, Plaintiff notes that he was entitled to file suit within 90 days after the EEOC issued its final decision on appeal. *See* 29 C.F.R. § 1614.407(c). He argues that, under these circumstances, the USPS should not be granted an opportunity for a "do over." Rather, he should be permitted to proceed on these new claims in court.

The Court OVERRULES Plaintiff's Objections concerning the remand. As noted above, the federal government's waiver of sovereign immunity under Title VII is conditioned on a plaintiff's "satisfaction of rigorous administrative exhaustion requirements." *Steiner*, 354 F.3d at 434-35. The same is true for the Rehabilitation Act. *Smith*, 742 F.2d at 262. Until Plaintiff fully exhausts his administrative remedies, this Court lacks jurisdiction to adjudicate his claims.

Based on the reasoning and citations of authority set forth by Magistrate Judge Ovington in her Report and Recommendations, as well as upon a thorough *de novo* review of this Court's file and the applicable law, the Court ADOPTS said judicial filing with respect to the claims of discrimination and retaliation arising after September 18, 2013, and DISMISSES them WITHOUT PREJUDICE. These claims are REMANDED to the USPS, to be processed as separate complaints, as required by 29 C.F.R. § 1614.504(c).

### iii)    Scope of Remand

One issue concerning the scope of this remand requires clarification. In her Report and Recommendations, Magistrate Judge Ovington stated that "the remand for processing of a new complaint will include processing of [Plaintiff's] post-

Settlement-Agreement claim of retaliation (that is, to the extent it involved retaliatory conduct that allegedly occurred *before* he filed his October 2012 EEOC charge)." Doc. #54, PageID#623 (emphasis added). She explained that "plaintiffs are not required to exhaust administrative procedures for retaliation claims based on conduct that occurs after the filing of the EEOC charge, given that those claims can be reasonably expected to grow out of the charge." *Id.* at PageID#622 (quotations omitted).

As Defendants noted in their Response in Opposition to Plaintiff's Objection to the Magistrate's Report and Recommendations, Doc. #60, however, the September 18, 2013, Settlement Agreement provides that Plaintiff "will forever give up and waive all claims and issues asserted" in his October 5, 2012, EEO complaint. Doc. #27-1, PageID#392. Notably, that EEO complaint included a claim of retaliation for unspecified "prior EEO activity." Doc. #33-1, PageID#472. The Court agrees with Defendants that Plaintiff is barred, by the terms of the Settlement Agreement, from pursuing a retaliation claim based on any events that occurred before October 5, 2012.

The Second Amended Complaint contains no allegation of retaliation occurring between October 5, 2012, and September 18, 2013, when the Settlement Agreement was executed. Rather, Plaintiff's retaliation claim is limited to conduct that occurred after that Agreement was executed. *See* Doc. #27, Page ID#384 ("*After initially settling Plaintiff's complaint*, Defendants took adverse actions against Plaintiff by denying him the agreed upon accommodation.")

31

(emphasis added).  The Settlement Agreement "does not prohibit the Complainant from filing future claims concerning any events that occur after the date this Agreement is executed by the parties."  Doc. #27-1, PageID#392.

Accordingly, on remand, the USPS must process Plaintiff's new claims of disability discrimination as a separate complaint, along with any claims of retaliation arising from conduct that occurred after September 18, 2013.

## IV.  Stay Pending Exhaustion of Administrative Remedies

The Court has overruled Defendants' Motion to Dismiss Counts III and IV of the Second Amended Complaint (the FTCA claim and the claim of intentional infliction of emotional distress).  Nevertheless, because the post-Settlement-Agreement claims of disability discrimination and retaliation asserted in Counts I and II of the Second Amended Complaint are being remanded to the USPS for processing as new complaints, the Court, in the interest of justice and judicial economy, will STAY all proceedings in the above-captioned case pending Plaintiff's exhaustion of administrative remedies.  This will allow all remaining claims to be tried together.

## V.  Conclusion

For the reasons set forth above, the Court ADOPTS Magistrate Judge Ovington's December 29, 2017, Report and Recommendations, Doc. #53, and OVERRULES Plaintiff's Objections thereto, Doc. #57.  The Court SUSTAINS

Defendants' Motion to Substitute the United States as a Party for Individual Defendant Dawn Grilliott, Doc. #34. The Clerk of Court shall note the substitution on the record and TERMINATE Ms. Grilliott as a party defendant.

In addition, for the reasons set forth above, the Court ADOPTS Magistrate Judge Ovington's January 9, 2018, Report and Recommendations, Doc. #54, and OVERRULES Plaintiff's Objections thereto, Doc. #58. The Court SUSTAINS IN PART AND OVERRULES IN PART Defendants' Third Motion to Dismiss, Doc. #33. With respect to Plaintiff's claims of disability discrimination, brought under the Rehabilitation Act of 1973 (Count I), and retaliation, brought under Title VII of the Civil Rights Act of 1964 (Count II), the pre-Settlement-Agreement claims are DISMISSED WITH PREJUDICE for failure to exhaust administrative remedies, and the post-Settlement-Agreement claims are DISMISSED WITHOUT PREJUDICE and REMANDED to the United States Postal Service for further proceedings. The Court OVERRULES Defendants' motion to dismiss Plaintiff's FTCA claim (Count III) and the claim of intentional infliction of emotional distress (Count IV).

The Court STAYS this case pending Plaintiff's exhaustion of administrative remedies on the post-Settlement-Agreement claims of discrimination and retaliation. The Clerk is directed to ADMINISTRATIVELY PROCESS this case. Plaintiff is directed to notify the Court after he has exhausted his administrative remedies so that the case may be reopened.

Date: March 26, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE