IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSE A. CENTENO,

        Plaintiff,

     v.

LOUIS DEJOY, Postmaster
General, United States Postal
Service, *et al.*,

        Defendants.

:

:

:

:

Case No. 3:16-cv-87

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT (DOC. #81);
DISMISSING ALL CLAIMS WITH PREJUDICE; JUDGMENT TO
ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF;
TERMINATION ENTRY

---

Plaintiff Jose Centeno lost his eyesight, forcing him to retire from his

position as a postal carrier with the United States Postal Service. He then filed

suit against the Postmaster General of the United States. His Second Amended

Complaint, Doc. #27, added a claim against Dawn Grilliott, the agency's Acting

Labor Relations Specialist. The United States, however, was later substituted as a

party for Ms. Grilliott. Doc. #63.

Plaintiff's Third Amended Complaint, Doc. #78, alleges: (1) disability

discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et*

*seq.*; (2) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e-16; (3) personal injury under the Federal Tort Claims Act, 28 U.S.C. § 2671; and (4) a state law claim of intentional infliction of emotional distress.

This matter is currently before the Court on Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint, Doc. #81, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1] That motion is now fully briefed and ripe for decision. *See* Docs. ##83, 84. The Court held a telephonic oral argument on the motion on June 28, 2021. Counsel then submitted supplemental briefs. Docs. ##85, 86.

## I. Factual Background and Procedural History

After Plaintiff retired from the military, he then worked for twenty years as a letter carrier for the United States Postal Service ("USPS" or "the agency"). He developed glaucoma and suffered from detached retinas in both eyes. These conditions required him to administer medicated eye drops three times per day, and keep his eyes closed for up to ten minutes after each application. He sought an accommodation for his disability so that he could comply with his doctor's instructions. He asked the agency to allow him to take paid comfort breaks in addition to his two regularly-scheduled 10-minute comfort breaks and his unpaid

---

[1] The United States Attorney's Office represents the United States on all claims brought against the Postmaster General, and on all claims originally brought against Defendant Dawn Grilliott (for which the United States was later substituted). Unlike the Motion to Dismiss the Second Amended Complaint, which was brought on behalf of "Defendants" (plural), this motion is captioned "Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint." Regardless of the caption, the Court notes that the motion seeks dismissal of all remaining claims against all Defendants.

2

30-minute lunch break.[2] Although the agency initially granted Plaintiff's requested

accommodation, it discontinued it in the summer of 2012.

On October 5, 2012, Plaintiff filed an internal Equal Employment

Opportunity ("EEO") complaint, alleging discrimination and retaliation. Doc. #81-

1. A Settlement Agreement, dated September 18, 2013, allowed him to once

again take the comfort breaks necessary to properly administer his eye drops.

Doc. #81-3, PageID##849-55. The Agreement provided, in part, as follows:

> Should a dispute arise regarding the implementation of this
> Agreement, it is agreed that the Complainant will not file a new
> administrative complaint or petition for enforcement until 15 days
> after the Complainant has notified the Agency that Complainant
> believes this Agreement has been breached, by providing the then
> Manager of Human Resources for the Postal Service Cincinnati
> District (or its successor) with a written statement which: (1) states
> that Complainant believes this Agreement has been breached; and (2)
> sets forth an explanation of how Complainant believes this
> Agreement has been breached. It is the intent of this paragraph to
> allow the Postal Service a reasonable time to, if possible, correct any
> real or perceived difficulties arising from the implementation of this
> Agreement.

*Id.* at PageID##854-55.

In the spring of 2014, the agency again denied Plaintiff the agreed-upon

accommodation. After Plaintiff's counsel contacted the District Human Resources

Manager about the alleged breach of the Settlement Agreement, the agency

agreed to continue honoring the agreed-upon accommodation. However, in

---

[2] Comfort breaks, customarily used when a letter carrier needs to use the
restroom, are not automatically calculated in the time for a given route.

November of 2014, Acting Labor Relations Specialist Dawn Grilliott informed

Plaintiff that, in the future, the agreed-upon accommodation would no longer be

honored. Instead, his unpaid lunch period would be extended from 30 minutes to

60 minutes.

Given that this change in schedule would prevent Plaintiff from being able

to properly administer his eye drops, he considered this to be a breach of the

Settlement Agreement and so informed the agency. He continued to take the

previously-agreed-upon comfort breaks while awaiting an agency response. Early

in 2015, Grilliott allegedly began harassing him about the accommodation.

At the end of April of 2015, Plaintiff noticed that, as he had been

forewarned, his unpaid lunch period was now being extended from 30 minutes to

60 minutes. On April 28, 2015, Plaintiff's counsel sent a letter to the agency's

Human Resources Manager concerning the breach of the Settlement Agreement.

As required by the Settlement Agreement, he gave the agency 15 days to address

the violation and comply with the settlement terms. Doc. #81-3, PageID#856.

However, he received no response.

Accordingly, on May 13, 2015, Plaintiff requested EEO counseling on these

new complaints of discrimination and retaliation by Dawn Grilliott. Doc. #27-3,

PageID##398-99. On July 2, 2015, Plaintiff's attorney notified the agency's EEO

Compliance Manager of the alleged breach of the Settlement Agreement and

demanded specific performance within 30 days. Doc. #81-3, PageID#857.

On July 13, 2015, the agency informed Plaintiff that his new complaints would be processed as a breach allegation, not as a new counseling request. *Id.* at PageID##858-61.  The agency found his complaint to be untimely filed because, although he was notified of the schedule change in November of 2014, he did not notify the agency of the alleged breach until May 13, 2015.  In addition, the agency denied that its actions constituted a breach of the Settlement Agreement.  The agency maintained that there was never an agreement authorizing him to be paid for an additional 30 minutes per day.  *Id.*

On August 5, 2015, Plaintiff appealed the agency's decision to the EEOC's Office of Federal Operations ("OFO"), asking for reinstatement of his underlying claims if a breach was found.  Doc. #81-2.  He acknowledged that he was told of the schedule change in November of 2014, but noted that the change was not implemented until April 27, 2015, rendering timely his May 13, 2015, notification to the agency.  He further argued that the Settlement Agreement specifically provided that he could use comfort breaks "as he is currently taking them," *i.e.*, up to three 10-minute comfort breaks per day in addition to his regularly scheduled breaks and lunch.  He also argued that any overtime hours he logged were attributable to the volume of mail on a given day, and not to the accommodation.  Doc. #33-3, PageID##485-87.

While the appeal to the OFO was pending, Plaintiff was denied the opportunity to take comfort breaks, and could not administer his eye drops as prescribed.  Plaintiff alleges that, as a result, he lost his ability to read the mail and

was unable to work after August 15, 2015. He took annual leave and sick leave for several months. Doc. #27, PageID#382.

In December of 2015, the OFO found that Plaintiff's complaint was, in fact, timely filed, and that the agency had breached the Settlement Agreement. Doc. #27-4, PageID##406-13. Although Plaintiff had requested reinstatement of his underlying claims, the OFO instead ordered specific performance of the Settlement Agreement and ordered the agency to verify that it had cured the breach. The OFO also notified Plaintiff of his right to file a civil action within 90 days. *Id.*

On January 29, 2016, the agency issued its final decision, certifying its compliance with the OFO's December 2015, mandate. Plaintiff was told that, upon his return to work, he would again be accommodated as previously agreed. *Id.* at PageID##414-15. By that time, however, Plaintiff's loss of sight was permanent and he could no longer work at all. He filed for retirement in January of 2016. Doc. #27, PageID#382.

Plaintiff filed this lawsuit on March 11, 2016. His Second Amended Complaint, Doc. #27, asserted claims of disability discrimination and retaliation against the Postmaster General (Counts I and II). It also asserted a personal injury claim under the Federal Tort Claims Act against the United States of America (Count III), and a claim of intentional infliction of emotional distress (Count IV).

Defendants filed a motion to dismiss. Doc. #33. On January 9, 2018, Magistrate Judge Sharon Ovington issued a Report and Recommendations, Doc.

6

#54, recommending that the Court sustain the motion in part and overrule it in part.  In a Decision and Entry dated March 26, 2018, Doc. #63, the Court adopted the Report and Recommendations.  As to Counts I and II, the Court dismissed with prejudice all claims that arose prior to the September 18, 2013, Settlement Agreement for failure to exhaust administrative remedies.  The Court dismissed all claims that arose after that Agreement without prejudice, and remanded them to the USPS for further proceedings, to be processed as new complaints.  On March 26, 2018, the Court overruled Defendants' motion to dismiss Counts III and IV, but stayed the case pending exhaustion of administrative remedies on Counts I and II.[3]  Doc. #63.

On remand, the USPS investigated Plaintiff's claims that arose after the September 18, 2013, Settlement Agreement, but refused to revisit claims concerning any alleged breach of that agreement.  The USPS issued its Final Agency Decision on December 4, 2018, finding no discrimination or retaliation.  Doc. #78-4.  The Final Agency Decision classified this as a "mixed case" complaint and included a notice of Plaintiff's right to appeal "to the Merit Systems Protection Board ("MSPB"), **not the Equal Employment Opportunity Commission**, no later than thirty (30) days of the date of receipt of this decision."  *Id.* at PageID#797

---

[3]  Plaintiff filed a Notice of Appeal of the Court's March 26, 2018, Decision and Entry.  Doc. #64.  On October 4, 2018, the Sixth Circuit Court of Appeals, however, determined that it lacked jurisdiction over the appeal because there was no final order.  Doc. #68.

(emphasis in original).[4] The agency included a copy of the MSPB appeal form and instructions for filing an appeal. *Id.* at PageID##797-98. Plaintiff was also notified that, in lieu of an appeal to the MSPB, he could file a civil action in federal court within 30 days of the date of receipt of the decision. *Id.* at PageID#798.

Despite these explicit instructions, Plaintiff did not appeal to the MSPB. Nor did he notify the Court that he was seeking judicial review of the Final Agency Decision. Instead, he appealed the agency's decision to the Equal Employment Opportunity Commission ("EEOC"). On August 11, 2020, the EEOC's Office of Federal Operations ("OFO") dismissed the appeal for lack of jurisdiction. Doc. #73-1. Plaintiff was notified of his right to request reconsideration within 30 days, and his right to file a civil action in federal court within 90 days. *Id.*

On September 28, 2020, Plaintiff notified the Court that he did not intend to appeal the OFO's decision. Doc. #73. During a conference call held on October 21, 2020, the Court granted Plaintiff leave to file a Third Amended Complaint. Plaintiff filed his Third Amended Complaint on February 13, 2021, asserting the same causes of action previously asserted in the Second Amended Complaint. He

---

[4] A "mixed case complaint" is "a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age, disability, or genetic information related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB). The complaint may contain only an allegation of employment discrimination or it may contain additional allegations that the MSPB has jurisdiction to address." 29 C.F.R. § 1614.302 (a)(1).

added several new factual allegations concerning alleged retaliation by Dawn

Grilliott.  Doc. #78, PageID#761.

This matter is currently before the Court on Defendant's Motion to Dismiss

Plaintiff's Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6).  Doc. #81.


**II.     Fed. R. Civ. P. 12(b)(1) and 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss

a claim for relief based on lack of subject matter jurisdiction.  Notably, challenges

to a court's subject matter jurisdiction can be made at any time.  *In re Federated*

*Dep't Stores, Inc.*, 328 F.3d 829, 833 (6th Cir. 2003).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal

of a complaint on the basis that it "fail[s] to state a claim upon which relief can be

granted."  The moving party bears the burden of showing that the opposing party

has failed to adequately state a claim for relief.  *DirecTV, Inc. v. Treesh*, 487 F.3d

471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir.

1991)).  The purpose of a motion to dismiss under Rule 12(b)(6) is to allow a

defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief

even if everything alleged in the complaint is true.  *Mayer v. Mylod*, 988 F.2d 635,

638 (6th Cir. 1993).  In ruling on a 12(b)(6) motion, a court must "construe the

complaint in the light most favorable to the plaintiff, accept its allegations as true,

and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555.

III. **Evidentiary Issue**

Defendant attached nine documents from Plaintiff's administrative record to its motion to dismiss, Doc. #81-1 through Doc. #81-9. Plaintiff summarily objects to the consideration of those documents in support of Defendant's motion, noting that, as a general rule, on a motion to dismiss, the Court cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment. Fed. R. Civ. P. 12(d).

In ruling on a motion to dismiss, however, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims

contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

As Defendant notes, the Third Amended Complaint ("TAC") specifically refers to most of the documents attached to the Motion to Dismiss, and those documents are central to the claims contained in the TAC. Accordingly, the Court may consider the following documents without converting the motion into a motion for summary judgment: (1) Doc. #81-1, referred to in paragraph 37 of the TAC; (2) Doc. #81-2, referred to in paragraph 72 of the TAC; (3) Doc. #81-4, referred to in paragraph 90 of the TAC; and (4) Doc. #81-9, referred to in paragraph 15 of the TAC.

Doc. #81-3 contains multiple documents that were attached to Centeno's brief in support of his September, 2015, appeal to the OFO. Some may be considered; others may not. The Settlement Agreement is referred to in paragraph 41 of the TAC; the April 28, 2015, violation letter to the agency is referred to in paragraph 69 of the TAC; the July 2, 2015, violation letter to the EEO Manager is referred to in paragraph 71 of the TAC; and the agency's July 13, 2015, response is referred to in paragraph 72 of the TAC. The Court may consider these documents, which are central to Plaintiff's claims.

However, the Court will not consider the October 22, 2014, meeting notice or the time sheets that were attached to the brief, given that these documents, which are also part of Doc. #81-3, are not referred to in the TAC. Likewise,

11

because Docs. ##81-5, 81-6, 81-7 and 81-8 are not referenced in the TAC, the Court will not consider these documents either.

## IV. Analysis

### A.    Counts I and II:  Disability Discrimination and Retaliation

Count I of the Third Amended Complaint alleges disability discrimination in violation of the Rehabilitation Act of 1973.  Count II alleges retaliation in violation of Title VII of the Civil Rights Act of 1964.  The Court previously divided Counts I and II into claims that arose prior to the September 18, 2013, Settlement Agreement, and claims that arose after that date.

#### 1.    Pre-settlement agreement claims

In its March 26, 2018, Decision and Entry, the Court dismissed with prejudice all claims that arose prior to the September 18, 2013, Settlement Agreement, because Plaintiff had failed to exhaust his administrative remedies as to these claims.  Doc. #63, PageID##695-700.  To the extent the Third Amended Complaint reasserts these claims, the Court finds no reason to revisit its previous decision.

#### 2.    Post-settlement agreement claims

The Court dismissed without prejudice the claims that arose after the September 18, 2013, Settlement Agreement, and remanded them to the United States Postal Service to be processed as new complaints.  Doc. #63, PageID##701-05.

As previously noted, the Postal Service issued its Final Agency Decision on December 4, 2018, finding no discrimination or retaliation. Doc. #78-4. Given that this was a "mixed case" complaint, the agency notified Plaintiff of his right to appeal "to the Merit Systems Protection Board, **not the Equal Employment Opportunity Commission**," within 30 days. The notice further stated that, in the alternative, Plaintiff could file a civil action in federal court within the same time period. *Id.* at PageID##797-98 (emphasis in original). Plaintiff, however, chose a different route. Despite the explicit admonition not to file an appeal with the EEOC, he filed an appeal with the EEOC on January 11, 2019. Not surprisingly, on August 11, 2020, the EEOC dismissed the appeal for lack of jurisdiction. Doc. #73-1, PageID##739-41.

In its Motion to Dismiss, Defendant argues that the disability discrimination and retaliation claims that arose after the September 18, 2013, Settlement Agreement must now be dismissed with prejudice because Plaintiff, having failed to timely appeal the Final Agency Decision to the MSPB or to the district court, has failed to exhaust his administrative remedies. The Court agrees.

The case of *Wray v. Donahue*, No. 2:13-cv-1006, 2014 WL 4181727 (S.D. Ohio Aug. 21, 2014) (Sargus, J.), is instructive in this regard. In *Wray*, the plaintiff's EEO complaint was processed as a mixed case complaint, and the Postal Service issued its Final Agency Decision, finding no discrimination. As it did with Mr. Centeno, the Postal Service informed Wray of her right to appeal to the MSPB (not the EEOC), or to file a civil action. Wray *did* file an appeal with the

MSPB, but it was dismissed as untimely. She did not timely appeal that decision. She also filed an appeal of the Final Agency Decision with the EEOC. When that appeal was dismissed for lack of jurisdiction, Wray appealed the EEOC's decision to the district court. The Court concluded that the EEOC had properly dismissed her appeal of the Final Agency Decision, and that, because she had failed to exhaust her administrative remedies, her claims were subject to dismissal. *Id.* at *7.

Here, despite clear notice in the Final Agency Decision that his only viable options were to file an appeal with the MSPB, or to file a civil suit in the district court, Plaintiff instead filed an appeal with the EEOC, which dismissed the appeal for lack of jurisdiction. Plaintiff maintains that he did not trust the Postal Service to accurately advise him of his appeal rights; however, as Defendant points out, Plaintiff's mistrust of the Postal Service is irrelevant.

Plaintiff relies on 29 C.F.R. § 1614.401(d) as the source of his belief that he had a right to appeal the Final Agency Decision to the EEOC's Office of Federal Operations. That regulation provides, in relevant part, as follows:

> (d) A grievant may appeal the final decision of the agency . . . on the grievance when an issue of employment discrimination was raised in a negotiated grievance procedure that permits such issues to be raised.

29 C.F.R. § 1614.401(d). As Defendant notes, however, this subsection of the regulation also expressly states that "[a] grievant may not appeal under this part, however, when the matter initially raised in the negotiated grievance procedure

. . . is appealable to the MSPB." *Id.* Because this was a "mixed case," it was appealable to the MSPB, rendering any appeal to the OFO inappropriate.

Plaintiff denies filing a mixed case complaint. He notes that he did not label it as such. This, however, is not determinative. As previously noted, a "mixed case complaint" is:

> a complaint of employment discrimination filed with a federal agency based on . . . disability . . . related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB). The complaint may contain only an allegation of employment discrimination or it may contain additional allegations that the MSPB has jurisdiction to address.

29 C.F.R. § 1614.302 (a)(1). Plaintiff's claims of disability discrimination and retaliation fall squarely within this definition.

Plaintiff notes that it was not until he received the Final Agency Decision that he learned that the agency was treating his complaint as a "mixed case." Citing 29 C.F.R. § 1614.302(b), Plaintiff argues that the Postal Service was required to notify him, *during the processing of his discrimination complaint*, that this was a "mixed case," and that its failure to notify him earlier led him to believe that he could appeal the Final Agency Decision to the OFO.

The Court rejects this argument. Section 1614.302(b) concerns the election of remedies in cases involving allegations of discrimination. It provides, in relevant part, as follows:

> Election. An aggrieved person may initially file a mixed case complaint with an agency pursuant to this part or an appeal on the same matter with the MSPB pursuant to 5 CFR 1201.151, but not both. *An agency shall inform every employee who is the subject of*

15

> *an action that is appealable to the MSPB and who has either orally or in writing raised the issue of discrimination during the processing of the action of the right to file either a mixed case complaint with the agency or to file a mixed case appeal with the MSPB.* The person shall be advised that he or she may not initially file both a mixed case complaint and an appeal on the same matter and that whichever is filed first shall be considered an election to proceed in that forum.

29 C.F.R. § 1614.302(b) (emphasis added).  The italicized language on which

Plaintiff relies imposes duties on the agency which are triggered if the *employee*

raises the issue of discrimination during the processing of the action.  Nothing in

this regulation requires the agency, prior to issuing its Final Agency Decision, to

notify the aggrieved person of its intent to treat a complaint as a "mixed case"

complaint.

The Final Agency Decision clearly notified Plaintiff of his right to appeal to

the MSPB, not the EEOC.  By appealing instead to the EEOC's OFO, he failed to

exhaust his administrative remedies.  Counts 1 and 2 of the Third Amended

Complaint are subject to dismissal with prejudice on this basis.[5]

### B.    Count III: Federal Tort Claims Act ("FTCA")

In Count III of the Third Amended Complaint, Plaintiff seeks recovery under

the Federal Tort Claims Act ("FTCA").  He alleges that Defendants knew of his

serious eye condition and his need for an accommodation.  They nevertheless

repeatedly breached the Settlement Agreement and denied him the opportunity to

---

[5]  The Court need not, and does not, address Defendant's alternative bases for dismissal of these claims.

16

use his eye drops as prescribed, causing him to "suffer the loss of his eyesight, a highly personal injury." Doc. #78, PageID#767.

Plaintiff's Second Amended Complaint contained a nearly identical claim. In her Report and Recommendations on Defendants' Motion to Dismiss the Second Amended Complaint, Doc. #54, PageID##624-25, Magistrate Judge Ovington noted that the Federal Employees Compensation Act ("FECA") provides the exclusive remedy to federal employees who are injured on the job. *See* 5 U.S.C. § 8116(c); *McDaniel v. United States*, 970 F.2d 194, 197 (6th Cir. 1992).

Plaintiff had argued, however, that because the Department of Labor's Office of Workers Compensation, Division of Federal Employees' Compensation, already determined that FECA did not cover his eye injuries, he was permitted to pursue a negligence claim under the FTCA. *See McDaniel*, 970 F.2d at 198 ("If the Secretary determines that the injury did not occur in the performance of duty, FECA does not cover the injury, and the employee may proceed in court."). Magistrate Judge Ovington found that Plaintiff's factual allegations, accepted as true, were sufficient to state a plausible claim under the FTCA. Doc. #54, PageID##625-26.

Neither party objected to this portion of the Report and Recommendations, which the Court then adopted. Doc. #63, PageID#690. Plaintiff maintains that there is no reason to revisit the Court's previous ruling. He argues that, because he has exhausted his administrative remedies under FECA, he is entitled to pursue his FTCA claim.

17

Defendant argues, however, that the injuries that were the subject of the Secretary of Labor's earlier finding are different from the later injuries that are the subject of his FTCA claim.  In July of 2008, Plaintiff alleged that, while on the job on June 21, 2001, he suffered a detached retina in his left eye, and on October 7, 2002, while on the job, he suffered a detached retina in his right eye.  He further alleged that, on May 2, 2008, while on the job, the vision in his right eye became blurry.  Doc. #81-9, PageID##877-78.  The Secretary of Labor determined that FECA did not cover these particular eye injuries because they were not job-related.

Plaintiff's current FTCA claim, however, is based on eye injuries sustained years later as a result of the agency's failure to provide him with his requested accommodation of allowing him comfort breaks to properly administer his eye drops.  Plaintiff alleges that the failure to accommodate his disability resulted in the "loss of his eyesight."  Doc. #78, PageID#767.  Defendant notes that there has been no determination by the Secretary of Labor that FECA does not cover this particular injury.  As such, Plaintiff cannot proceed on his FTCA claim.

As Defendant points out in its Motion to Dismiss the Third Amended Complaint, Plaintiff also faces another jurisdictional roadblock on this FTCA claim.[6]  Plaintiff's loss of eyesight allegedly arises, not from an "injury" suffered on the job, but from the agency's breach of its duty to provide a reasonable

_____

[6]  Defendant again notes that jurisdictional arguments can be raised at any time.

18

accommodation for Plaintiff's disability. *See* Doc. #78, PageID#767. As such, the

Rehabilitation Act provides the exclusive remedy for Plaintiff's injury. *See Plautz*

*v. Potter*, 156 F. App'x 812, 815 (6th Cir. 2005) ("The Rehabilitation Act is a federal

employee's exclusive remedy for employment related discrimination based on a

disability."); *Spinosi v. United States*, No. 2:11-cv-961, 2011 WL 7144897, at *4

(S.D. Ohio Dec. 6, 2011) (Deavers, M.J.), *report and recommendation adopted*,

2012 WL 368133 (S.D. Ohio Feb. 3, 2011) (holding that claimant cannot use the

FTCA to "enforce purported federal statutory duties" or to vindicate rights under

the Rehabilitation Act). Count III of Plaintiff's Complaint is subject to dismissal

with prejudice on this basis.

### C.     Count IV: Intentional Infliction of Emotional Distress

Count IV of the Third Amended Complaint seeks damages for intentional

infliction of emotional distress. It alleges that Dawn Grilliott's false accusation

that Plaintiff was using his disability accommodation to work daily overtime was

extreme and outrageous and beyond all bounds of decency, and caused him

severe emotional distress. Doc. #78, PageID#768.

Magistrate Judge Ovington previously rejected Defendants' arguments that

Plaintiff had failed to identify a right that was "distinct and independent" of his

rights under Title VII, and that Plaintiff had failed to state a plausible claim for

relief. Doc. #54, PageID##627-28. When neither party objected to her

recommendation that this claim be permitted to proceed, the Court adopted this

portion of the Report and Recommendations. Doc. #63, PageID#690.

19

Defendant now asks the Court to dismiss this claim on grounds not previously raised. It first notes that the Federal Tort Claims Act ("FTCA") is the only avenue by which a plaintiff can sue the United States in tort. *Johnston v. O'Neill*, 130 F. App'x 1, 6 (6th Cir. 2005). Accordingly, Defendant argues that Plaintiff's claim of intentional infliction of emotional distress must be construed as an FTCA claim.

Defendant then argues that, because Plaintiff has not exhausted his administrative remedies on this FTCA claim, he cannot proceed. *McNeil v. United States*, 508 U.S. 105, 113 (1993). Although Plaintiff filed an administrative claim under the FTCA for "permanent loss of eyesight in both eyes," *see* Doc. #27-4, PageID#423, it made no mention of harassment by Dawn Grilliott, and did not include any claim of emotional distress.

The Court finds that Plaintiff has failed to exhaust his administrative remedies under the FTCA on his claim of intentional infliction of emotional distress. Moreover, staying this claim to allow him to exhaust his administrative remedies would be futile because, as Defendant also argues, the claim is subject to dismissal on other jurisdictional grounds. To the extent that this claim of intentional infliction of emotional distress is based on the revocation of his disability accommodation, the Rehabilitation Act provides his exclusive remedy. *Plautz*, 156 F. App'x at 815. To the extent it is based on harassment by a supervisor, FECA provides the exclusive remedy. *Saltsman v. United States*, 104

F.3d 787, 790 (6th Cir. 1997); *Jones v. Tenn. Valley Auth.*, 948 F.2d 258, 265 (6th Cir. 1991).

Accordingly, the Court sustains Defendants' motion to dismiss Count 4, the claim of intentional infliction of emotional distress, and dismisses said claim with prejudice.

### V.    Conclusion

For the reasons set forth above, the Court SUSTAINS Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint, Doc. #81, and DISMISSES all claims WITH PREJUDICE.

Judgment shall enter in favor of Defendants and against Plaintiff.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: September 30, 2021

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

21